MILLARD, Respondent, v. SMITH et al., Appellants.

St. Louis Court of Appeals, June 5, 1906.

1. **EXECUTORS AND ADMINISTRATORS:** Contract for Sale of Land: Individual Liability. Where an executrix, having an interest under the will in the decedent's land, executed an option contract empowering one to sell the same, describing herself only as executrix, she was individually bound by the contract to the extent of her interest; having no power to contract concerning the property as executrix, the designation of her character was only *descriptio personae.*

2. ———: ———: Estoppel: Agency. And where in such case the property was sold by the person holding the option and the

executrix confirmed the sale by receiving the proceeds and executing and delivering a deed to the purchaser, she was estopped to deny the agency of the person holding the option and sell her interest; and this is true although the option contract was for the sale of the entire property and executed by the other parties in interest.

3. **AGENCY: Fraud of Agent.** If an agent is employed to sell land for his principal and makes a sale by means of false representations in respect to the land, though without the authority or knowledge of his principal, the principal is charged with fraud in the same manner as if he had known or authorized it.

Appeal from Texas Circuit Court.—*Hon. L. B. Woodside,* Judge.

REVERSED AND REMANDED.

*W. L. Hiett* and *Woodruff & Mann* for appellants.

(1) The court erred in excluding the written instrument called "Contract of Option" offered by defendants. The burden of showing that Thos. F. Millard, of whom defendant L. X. Smith bought the property, in part payment for which the note sued on was given, was the agent in making said sale of plaintiff, was on defendants. Gentry v. Ins. Co., 15 Mo. App. 215; Breckinridge v. Ins. Co., 87 Mo. 62. (2) The court erred in refusing instruction numbered one asked by the defendants. Plaintiff received the benefits of the trade or sale that Thos. F. Millard had made for her, and was suing on the note taken by him for her as part of the purchase price of said sale. She could not at the trial be heard for the first time to say that the said Millard did not represent her in said trade and the court should have, when requested by plaintiff, so instructed the jury. Fahy v. Grocer Co., 57 Mo. App. 73; Watson v. Biglow, 47 Mo. 413; Mechem on Agency, sec. 148; Dry Goods Co. v. Bank, 81 Mo. App. 46; Sash & Door Co. v. Gitchell, 69 Mo. App. 115; Hoppe v. Saylor, 53 Mo. App. 4; Rice v. Groffman, 56 Mo. 434. Although it be true as plain-

tiff testifies that she did not authorize Thomas F. Millard to make this sale for her, yet it is also true that by adopting the sale she ratified his act and ratified it as it was done. Menkens v. Watson, 27 Mo. 163. (3) The court erred in giving instruction No. 2 on behalf of plaintiff. There was not a scintilla of evidence that at the time the trade was made Thos. F. Millard's representations were mere estimates and were made as such, and that defendant L. X. Smith was informed as to the source and information upon which the estimates were made. Warder v. Seitz, 157 Mo. 140, 57 S. W. 537; Palmer v. Telephone Co., 91 Mo. App. 106; Marr v. Bunker, 92 Mo. App. 657; Mining Co. v. Frankenstein, 179 Mo. 564, 78 S. W. 785.

*Lamar, Barton & Lamar* for respondent.

(1) This written instrument headed "Contract of Option," is referred to and treated by both parties as an option; and was intended by all the parties thereto as an option, and in fact, is an option. It gives Thomas F. Millard "the exclusive option for the space and duration of five months from this date, etc." By no kind of construction, or interpretation, can any authority be found in this instrument to sell the individual, separate, interest of E. M. Millard; it could not by any construction bind plaintiff individually, as it was not signed in her individual capacity, and if it had been, did not authorize a sale, or create an agency for the sale, of her individual, separate, interest in this property; consequently it was *res inter alios* and was not admissible in this case. Bane v. Clark, 39 Mo. 256; Greenleaf on Evidence (15 Ed.), sec. 64; 11 Am. and Eng. Ency. Law (2 Ed.), page 509; 17 Cyc., page 274; Field v. Stubblefield, 85 Mo. 199. (2) Before there can be a ratification, the party must claim to be the agent of or acting for a principal. There can be no ratification of the act

of a third party unless such act was done ostensibly as agent. Story on Agency (7 Ed.), sec. 251a, and note 2; Merchem on Agency, sec. 127-124; 1 Am. and Eng. Ency. Law (2 Ed.), page 1188; Herd v. Bank, 66 Mo. App. 643; Ketchen v. Norris, 75 Mo. App. 588; Steimkamper v. McManus, 26 Mo. App. 51; Ferry v. Taylor, 33 Mo. 334; Hammerslaugh v. Cheatam, 84 Mo. 22.    (3)    Although a person assuming to act for another makes a sale of the latter's goods with a warranty or representation of fitness, and the owner on being advised of the sale ratifies it, said ratification does not include a warranty or representation of which the seller has no notice.    Tiedman on Sales (1 Ed.), sec. 183; Veirman v. City Mills Co., 151 N. Y. 482, 56 Am. St. Rep. 638; Count v. Snider, 2 Ind. App. 440, 50 Am. St. Rep. 250.    (4)    Defendant did not plead fraud and deceit, but elected to stand on a warranty, and plead a warranty by Thomas F. Millard, as agent of plaintiff, and the failure of that warranty.    There was no warranty, as estimates, expressions of opinion, and such statements as were made in these letters, with the disclosure of the information on which they were based, did not constitute a warranty.    1 Parsons on Contracts (8 Ed.), pp. 576 and 579; Bank v. Anderson, 85 Mo. App. 351; Norris v. Reinstedler, 90 Mo. 626; Anthony v. Potts, 63 Mo. App. 517; Lovelace v. Suter, 93 Mo. App. 429, 67 S. W. 737.    In the latter case (loc. cit. 438) it is said "if one makes a representation as a matter of opinion, as something that has been represented or imparted to him, just as he imparts it to another, no foundation for a case of deceit arises."    Bank v. Byers, 139 Mo. 652, 41 S. W. 325; People's Bank v. The Central Trust Co., 179 Mo. 648, 78 S. W. 618; Parettie v. Rebenack, 81 Mo. App. 494.

STATEMENT.—The suit is on a promissory note for thirty-seven hundred and fifty dollars, bearing interest at the rate of eight per cent per annum from date,

against L. X. Smith, the principal, and the other de-
fendants as indorsers. The defense is a failure of con-
sideration, verdict and judgment for plaintiff for thirty-
seven hundred and fifty dollars. The plaintiff is the
widow of G. F. Millard, who, in his lifetime, planted and
cultivated a ginseng garden on his home place in the
city of Houston, Texas county, Missouri, and a larger
one on a sixty-five-acre tract of land he owned, situated
about three miles from Houston, on Piney river. G. F.
Millard, by his last will, devised all the ginseng plants
and roots in the home garden to the plaintiff, and also
an undivided one-half interest in the sixty-five-acre tract
on Piney river and the ginseng plants and roots grow-
ing thereon; the other undivided one-half he devised to
Thomas F., Homer, and Herbert Millard, his nephews,
and named the plaintiff and Charles M. Beaumont ex-
ecutrix and executors of his last will, both of whom
qualified. Beaumont is also curator of the estate of
Herbert Millard, a minor. L. X. Smith and Thomas F.
Millard are blood cousins, and were together in Houston
sometime in the year 1901, and made a casual examina-
tion of the ginseng gardens, and discussed the advisa-
bility of forming a corporation to acquire the interest of
the plaintiff in the ginseng property and to capitalize
both gardens. Smith returned to his home in Cripple
Creek, Colorado, and in the latter part of the year 1902,
Thomas Millard, who was in Waco, Texas, entered into
a correspondence with Smith, then in Cripple Creek, re-
specting the formation of a syndicate of capitalists at
Cripple Creek to acquire the interest of plaintiff, or the
whole property, to incorporate and operate it by cul-
tivating ginseng. This correspondence continued into
the early part of the year 1903, and until it was demon-
strated that capitalists in Cripple Creek, whom Smith
had hoped to interest in the property, would not take
hold of it. A proposition that Smith should buy the in-

119 App.—45

terest of plaintiff in the property and that a corpora-
tion be formed to acquire and operate the whole proper-
ty, was discussed by further correspondence between
Smith and Millard, which culminated in Millard pro-
curing the following contract:

## "CONTRACT OF OPTION.

"This agreement, made and entered into this third
day of March, 1903, by and between Charles M. Beau-
mont and Elizabeth M. Millard, executors of the last
will and testament of G. F. Millard, deceased, and
Homer S. Millard and Thomas F. Millard, legatees of
the said G. F. Millard and Charles M. Beaumont as
guardian and curator of the estate of Herbert Millard,
a minor, all parties of the first part, and Thomas F.
Millard, party of the second part.

"Witnesseth:    That the said parties of the first
part, in consideration of the sum of one dollar, to them
in hand paid by the said Thomas F. Millard, party of
the second part, the receipt of which is hereby acknow-
ledged, have this day contracted and agreed with the
said Thomas F. Millard, that he shall have exclusive op-
tion for the space and duration of five months from this
date on the sale of lot 2 of the northeast quarter of sec-
tion 2, township 30, range 10 (except two acres hereto-
fore sold to R. E. Barnard), including the ginseng be-
ing, standing and growing thereon or appurtenant there-
to, including all plants, roots and everything in connec-
tion with said ginseng plantation, and also the ginseng
and plants standing, being and growing on the ground
near the G. F. Millard house in Houston, Missouri, at
a price not less than $10,000, and for the space of five
months from the date hereof, is to have the exclusive
right to negotiate a sale for the said ginseng and lands
herein mentioned.

"The parties of the first part to realize from said sale the net sum of $10,000.

"In testimony whereof, the parties hereto have signed their names in duplicate, the day and year first above written.

"CHARLES M. BEAUMONT,

"ELIZABETH M. MILLARD,

"Executors of the estate of G. F. Millard, deceased.

"H. S. Millard,

"Chas. M. Beaumont,

"G. & C. Herbert Millard.

"Party of the second part."

After getting posession of this contract, early in May, Thomas Millard went to Cripple Creek and sold plaintiff's interest in the property to Smith for seventy-five hundred dollars, one-half to be paid in cash and the balance to be secured by notes. Smith furnished his father, W. M. Smith, with the money to make the cash payment and sent him, accompanied by Millard, to Houston with authority to close the deal. It was also agreed by and between Millard and L. X. Smith, that a corporation should be formed with a capital of one hundred thousand dollars, fifty thousand dollars of which should represent the value of the whole property and fifty thousand dollars to be held as treasury stock. W. M. Smith and Millard proceeded to Houston, the deal was closed by the payment of thirty-seven hundred and fifty dollars to the plaintiff and the delivery to her of the note in suit, whereupon she executed a deed conveying the property to ————. The contemplated corporation was immediately organized and its name inserted in the deed as the grantee. The following is a list of the shareholders in the corporation:

L. S. Smith,......................$48,000.00
Thomas F. Millard,............... 25,000.00

| | |
|---|---:|
| Homer S. Millard,................ | 25,000.00 |
| W. M. Smith,........... .......... | 16,000.00 |
| B. L. Knapp,.................... | 100.00 |
| D. E. Cowan,.................... | 100.00 |
| Thomas M. Jones,............... | 100.00 |
| C. E. French,................... | 100.00 |

The charter of the corporation was issued May 28, 1903, five days subsequent to the execution and delivery of the plaintiff's deed.

The substance of the averments in the answer, pleading a failure of consideration, are that Thomas Millard was the authorized agent of plaintiff in making the sale to Smith; that the value of the property consisted almost entirely in the number and age of the ginseng plants and roots in the garden; that Smith had no knowledge of the number or ages of the plants and had no opportunity to count them and relied entirely upon the statements and representations of Millard, plaintiff's agent, respecting them; that Millard represented and warranted, that in the home garden, there were ten thousand four-year-old plants and twenty-five thousand from five years up, and a mixed lot of different ages, from one to two years old; that in the river garden there were thirty-one thousand three-year-old plants, and eleven thousand four-year-old plants, whereas, in truth and in fact, counting one-half the roots in the river garden and all the roots in the home garden, as belonging to plaintiff and all that passed by the sale, there were but one thousand one-year-old plants, six thousand two hundred and fifty two-year-old, twelve thousand four hundred and ninety three-year-old, none that were four years old and only sixty-six hundred and thirty-four that were five years old, making a total of only twenty-six thousand three hundred and seventy-four plants, worth at the time of the sale less than thirty-seven hundred and fifty dollars.

In September, 1902, defendant Smith went to Hous-

ton and in a few days after his arrival, counted and had counted the ginseng roots then in both gardens. His evidence tends to show that Thomas Millard represented him, that he was buying a half interest in forty-two thousand plants in the river garden and thirty-five thousand old plants in the home garden, and that he relied upon these representations and believed that he was buying what Millard represented he was selling; that by actual count, in September 1902, there were only seven thousand and ninety-six five-year-old, twenty-seven hundred and fifty-eight under five, and ten thousand one hundred and forty-six three-year-old plants in both gardens owned by plaintiff, and that the difference in the value of the property as represented by Millard and its real value exceeded the amount of the note sued on.

In rebuttal plaintiff offered evidence tending to show that the season of 1903 was unusually wet and very unfavorable to the preservation and growth of ginseng plants; that wet weather caused them to rot. Plaintiff had no correspondence with defendant Smith in regard to the sale and purchase of the property, and plaintiff testified that at the time she made the deed she did not know and was not informed who the purchaser was.

BLAND, P. J. (after stating the facts).—1. Plaintiff objected to the introduction of the contract of March 3, 1903 (copied in the statement). The court sustained the objection, thereby cutting up the defense by the roots, as there is scarcely any evidence, outside of this contract, showing or tending to show that Thomas Millard was the authorized agent of the plaintiff to sell the property. The contract is a two-fold one. It gave Thomas Millard an option to buy the entire property at a price not less than ten thousand dollars, at any time within five months from the date of the contract, and also conferred on him the exclusive right to negotiate

a sale of the property at any time within the five months, to whomsoever he might. Plaintiff objected to the contract as evidence, on the ground that she signed it as executrix of her husband's will and not in her individual capacity. At the death of her husband, his estate in the whole of the property passed to plaintiff and Thomas, Homer and Herbert Millard under the will. The property was not a part of the estate, and hence not a subject-matter concerning which plaintiff, as executrix, could contract; and from the mere fact that plaintiff signed the contract as executrix, it will not be presumed that she intended to make a nude agreement. The description of herself as executrix is nothing more than *descriptio personae,* and she is individually bound by the contract. To hold otherwise would be to hold that she did a useless thing for no purpose, whereas the evidence clearly shows that she intended that Thomas Millard should have an option, for a period of five months, to buy her interest in the property himself or negotiate a sale to any other person, at a price not less than that named in the contract. Plaintiff confirmed the sale made by Millard by receiving the proceeds and executing and delivering a deed conveying her interests in the property, and it seems to us she is in no position to deny the agency of Millard. [Breckinridge v. Ins. Co., 87 Mo. 62; Gentry v. Ins. Co., 15 Mo. App. 215.]

Plaintiff further insists that the contract contains no authority to Millard to sell her separate interest. It is true, the contract provides for a sale of the entire property and, according to the evidence, the entire property was sold, all of it going to the corporation agreed to be organized at the time L. X. Smith bought the individual interest of plaintiff; and as the whole includes all the parts, and as plaintiff could bind no one but herself, regarding the sale of the property, and as she accepted a sale of her separate interest, we think this point is put entirely out of the case, and conclude that the

learned trial judge erred in excluding the contract as evidence.

2. Plaintiff cites Bank v. Looney, 63 Am. St. Rep. 830; Bash v. Minnesota Title & Trust Co., 163 Mass. 574; and Hoyer v. Ludington, 100 Wis. 441, as holding a sale or conveyance procured through false representations of an agent, without the participation or knowledge of the principal, as binding on the purchaser and the purchaser cannot rescind the sale or defend against the principal for the purchase price because of the fraud of the agent.

In Bank v. Looney, supra, it was correctly held, that one induced to purchase property by misrepresentations made by a third person, other than the vendor and for whose acts the vendor is not responsible, is bound by the purchase and cannot avoid notes given by him for such purchase. The case of Nash v. Title & Trust Co., supra, is not at all in point. In the Wisconsin case, it was held: "One who employs an agent to sell a particular tract of land is not responsible for false representations made by such agent respecting the organization and stock of a corporation formed to purchase the land, with which the principal has nothing to do." The vendor was not bound by such representations, for the reason they were not made respecting the subject-matter the agent was authorized to sell. In the course of the discussion, at pp. 444-5, the court said: "There is no doubt of the general proposition that, if an agent is employed to effect the sale of lands for his principal, and he does so by means of false representations in respect to the land conveyed, even without the authority or knowledge of his principal, the latter is chargeable with such fraud in the same manner as if he had known or authorized the same." And this is unquestionably the law.

3. The court gave the following instruction for plaintiff:

"The court instructs the jury that, although you may believe from the evidence that Thomas F. Millard was the agent of plaintiff for and in the sale of the ginseng and property mentioned in defendant's answer, yet, if you further find from the evidence that the representations of said Thomas F. Millard to defendant L. X. Smith, as to the number, ages, quality and condition of said ginseng were mere estimates and were made as such —and defendant L. X. Smith was so informed as to the source and information upon which such estimates were made, then you should find the issues for the plaintiff."

Defendant insists that there is no evidence on which to base this instruction. We are of a contrary opinion. Numerous letters of Thomas Millard to L. X. Smith, written prior to the sale, show that Millard had no personal knowledge of the number, ages, etc., of the ginseng plants in either of the gardens, and in his letters to Smith, whenever he mentioned the number, ages, etc., of the plants, he was careful to state that his estimates were from estimates made by his brother, Homer, who, it seems was in charge of the gardens at the time.

For error in excluding the contract of March 3, 1903, as evidence, the judgment is reversed and the cause remanded. All concur.