WILLIAM H. GOTTFRIED v. MARTHA BRAY, Appellant.

Division Two, December 24, 1907.

1. SPECIFIC PERFORMANCE: Contract: Parol Evidence of Mistake. Defendant may show by parol evidence that the contract, which plaintiff seeks to have specifically performed, even when written, does not, through the mistake of both or either, express the real agreement.

2. ————: ————: ————: Read by Plaintiff to Defendant. The contract, written by plaintiff, obligated defendant to convey a lot 50 by 226 feet at $50 per front foot. Defendant testified that in all the prior negotiations they had agreed upon a lot 50 by 220 feet at $60 per front foot, and that plaintiff came to her house with his wife on a social visit, and presented to her what he termed a receipt for $50 paid on the purchase price, and represented it to be such and nothing more; that she explained to him that she could not read the writing owing to defective eyesight, and that she would go and get her other eye-glasses which would enable her to read it; that plaintiff reassured her and volunteered to read it himself; that she trusted him to read the writing as it really existed, which he pretended to do; that he did not read it as it was, but purposely omitted all that part relating to the price and size of the lot. She was corroborated by plaintiff and another witness that in all the prior negotiations the lot was to be only 220 feet deep, and that together they had pointed out the line, and that her rea-

son for refusing to sell the other six feet was that to do so would be to destroy her driveway and access to her other property. As to the price she was not corroborated, and plaintiff flatly contradicted her testimony, but another witness testified that the contract was not read to her as it was drawn, and that it was represented to her to be simply a receipt to bind the bargain. Up to that time nothing had been said about a contract, the sale being one for cash. *Held*, that the trial court erred in decreeing specific performance.

3. ———: **Discretion.** Specific performance is not decreed as a matter of course. It rests in the sound, not arbitrary, discretion of the court.

4. ———: **Valid Contract.** The fact that plaintiff is able to establish a contract valid at law is not sufficient to entitle him to specific performance. A court of equity often refuses specific performance of a contract it would not set aside.

5. ———: **Refusal to Permit Inspection.** Where the pretended contract was prepared by plaintiff's lawyer, without defendant's knowledge, and taken to her house by plaintiff when he and his wife were calling socially, and read to her by him, a subsequent refusal by him to permit her to read it strongly smacks of unfair dealing.

6. **EQUITY: Deference to Chancellor.** The appellate court defers in a large measure to the judgment of the trial court on a finding of facts in an equity case, but such finding is not conclusive.

Appeal from Greene Circuit Court.—*Hon. Jas. T. Neville*, Judge.

REVERSED (*with directions*).

*Barbour & McDavid* and *McCollum & Johnson* for appellant.

(1) The right to have specific performance of a contract decreed is not a matter of right in either party, but a matter of discretion with the court. 2 Story, Eq., sec. 742; Pomeroy v. Fullerton, 131 Mo. 581; Veth v. Gierth, 92 Mo. 104. A court will not decree specific performance of contract unless the contract is clearly established. Veth v. Gierth, 92 Mo. 97; Paris v. Haley, 61 Mo. 453; Taylor v. Williams, 45 Mo. 80. It is a well-

established rule that in suits for specific performance of contracts, even when written, the defendant may show by parol that the writing does not express the real agreement. 2 Pomeroy's Equity Jur. (2 Ed.), 860; Railroad v. Curtis, 154 Mo. 10. (2) The learned trial court evidently tried and rendered judgment in this case on the theory that the written contract offered in evidence was conclusive evidence of the agreement between plaintiff and defendant, notwithstanding the fact that this contract was assailed by defendant as having been fraudulently obtained, and not voicing the agreement for the sale of the lot had between herself and plaintiff. The controlling question in this case is whether or not defendant was tricked into signing this contract as she testifies she was, or whether it spoke the agreement had between the parties relative to the sale of the lot, and in determining this fact in the light of all the testimony, the contract offered in evidence in itself should not be weighed in the scale as against defendant, but the question should first be determined from the evidence as to whether or not this was a contract between the parties. (3) The preponderance of the evidence in this action was clearly in favor of defendant.

*Tatlow & Mitchell* and *E. D. Merritt* for respondent.

In this case the issue was sharp and direct in the trial court as to whether plaintiff did, or did not, read all of the contract of sale to defendant at the time of its execution, and there is sufficient evidence to sustain either contention. In such a case the appellate court will not interfere with the findings of the trial court. Strine v. Williams, 159 Mo. 582; Chance v. Jennings, 159 Mo. 560; Arn v. Arn, 81 Mo. App. 133; Culver v. Smith, 82 Mo. App. 390; Carter v. Dilley, 167 Mo. 571; Benne v. Schnecko, 109 Mo. 250; Clark v. Bank, 57 Mo. App. 277. Defendant in her brief assigns no error

committed by the trial court in the admission of evidence. No declarations of law were asked or given. Her four assignments of error all resolve themselves into this, that the court should have found for defendant instead of for plaintiff. Under the authorities cited the findings of the trial court will not be disturbed.

GANTT, J.—The plaintiff, William H. Gottfried, brought his suit in the Greene County Circuit Court against the defendant, Martha Bray, alleging that on the 29th day of June, 1903, defendant agreed in writing to sell to him certain real estate situated in the city of Springfield, which alleged agreement is as follows: "50.00. Received from William H. Gottfried the sum of fifty dollars, the same being part of purchase price of the east fifty feet of the lot or tract of land now and for many years past owned and occupied by me as a residence and situated on East Walnut street, on the north side of the street, between Jefferson and Kinbrough streets, in the city of Springfield, Greene county, Missouri. Said lot so purchased by said Gottfried has a frontage of fifty feet on Walnut street with a depth of two hundred and twenty-six feet. The purchase price of said lot is to be fifty dollars per front foot on Walnut street, and is to be due and payable when I tender to said Gottfried an abstract of title showing perfect title in me, together with a good and sufficient deed of conveyance, with covenants of general warranty, conveying said lot to said Gottfried. Abstract and deed to be furnished within ten days from date thereof.

"Dated this June 29, 1903.     Martha Bray."

Plaintiff prayed specific performance of said alleged contract. Defendant's answer pleads as a defense to the action that she never agreed to the writing sued on, nor the terms thereof, although her name was appended thereto; that she and the plaintiff had

been negotiating with reference to the sale of this piece of ground prior to the execution of the alleged contract, but that in all of their negotiations they had talked of and agreed upon $60 per front foot as the price of the property to be sold, with a depth of 220 feet; that the plaintiff had never complained of the price, but on the contrary agreed to the same, and also to the depth which said lot should have. The plaintiff came to her house in company with his wife and presented to the defendant what he termed a receipt for money, and represented it as such and nothing more; that she explained to plaintiff that she could not read the writing owing to defective eyesight, and stated that she would go and get her other glasses which would enable her to read it; that plaintiff reassured her and volunteered to read it himself; that she trusted him to read the writing as it really existed, which he pretended to do; that he did not read it as it is set forth in the contract sued on, but purposely omitted from such reading, and with intent to defraud this defendant and procure her signature to an instrument, to the terms of which she did not and does not agree, all that part of said alleged contract relating to the price per front foot, and to the depth of the lot.

Defendant further states as a defense to said action that she relied upon plaintiff's representation that he would read it correctly, and that it contained only a receipt for the $50 which he at that time was paying her, and signed the same, but that said writing did not contain the terms upon which the ground had been sold, but other and different terms, and that her signature was procured through fraud and misrepresentation. The circuit court decreed specific performance and defendant appeals.

I. That there was an agreement by defendant to sell plaintiff a portion of her residence lot fronting on Walnut street in the city of Springfield, there can be

no doubt. Plaintiff insists that she agreed to sell and convey him the east fifty feet of said lot fronting on Walnut street and extending in depth 226 feet, for fifty dollars per front foot or $2,500 in the aggregate; whereas, defendant testifies and insists she only agreed to sell him fifty feet front with a depth of 220 feet for sixty dollars per front foot or $3,000 in the aggregate. On the part of the plaintiff the evidence consists of plaintiff's testimony and the written memorandum prepared at his instance and signed by defendant. The defendant on her part testified positively that she agreed to sell plaintiff the fifty feet, but that it was only to extend 220 feet in depth and that the price was sixty dollars per front foot or $3,000; that during the negotiations she and her niece, Mrs. Collins, went with plaintiff over the lot and showed him that the 220 feet extended to the barn lot fence and that she would not sell more that that amount, as more would ruin her driveway; that previous to plaintiff's coming to her residence she and her niece had measured the lot and found that 220 feet deep would take the lot to her barn fence, and she cut a notch in the fence to show him where it would come to, and when plaintiff came, she and Mrs. Collins went with him and showed him where it would come and plaintiff said that it was as deep as he wanted it, and she told him then and there that was all she would sell under any circumstances or consideration, because if she sold more she would have to drive between her barn lot and his lot and that would ruin her driveway. On this point Mrs. Collins fully corroborated defendant. She testified the lot was to be fifty feet in width and 220 feet in depth. She had assisted her aunt, the defendant, in measuring the lot the day before plaintiff came to look at it. Defendant wanted to know how near the fifty feet would come to her house. On this branch of the testimony, plaintiff, on cross-examination, testified that when he went to the

208 Sup—42

lot defendant said the additional six feet would take
her chicken coop and she did not want to lose that, and
he replied, "Well, the contract was for a lot 226 feet
deep;" that she said she had stepped it off and was
afraid it would take her chicken coop, and he, plaintiff,
kind of laughed it off and said, "Well, that is not of
much consequence," and said no more about it. Plain-
tiff then left and went to his attorney and had him pre-
pare the memorandum of the trade set out in plaintiff's
petition.

The real contention on this appeal hinges upon the
execution of the memorandum of sale by defendant,
for while in a court of law the written document is pre-
sumed to contain the final agreement of the parties and
that all prior verbal negotiations are merged therein,
it is nevertheless a well-established rule that when
a plaintiff comes into court of equity for a specific per-
formance of the agreement, even when written, the
defendant may by parol evidence show that through
the mistake of both or either of the parties, the writing
does not express the real agreement, or that the agree-
ment itself was entered into through a mistake as to
its subject-matter or as to its terms. "In short," says
Pomeroy in 2 Pomeroy, Eq. Jur. (2 Ed.), sec. 860, "a
court of equity will not grant its affirmative remedy to
compel defendant to perform a contract which he did
not intend to make, or which he would not have entered
into had its true effect been understood." We are
required by the arguments of respective counsel to
scrutinize the transaction which resulted in defendant's
signing the written agreement. It appears that after
the plaintiff and defendant had had one or two short
conversations in regard to the trade, on the street, or in
plaintiff's store in the city, plaintiff went to the resi-
dence of the defendant and together they looked over
the lot. In view of the positive testimony of defendant
and Mrs. Collins that the proposed tract to be sold was

to be only 220 feet deep and the admission of plaintiff on cross-examination that Mrs. Bray did raise an objection to conveying more than 220 feet in depth, the preponderance of the testimony tends to show that defendant did not agree to sell plaintiff a lot 226 feet deep as set forth in the memorandum, and defendant gave a good reason for declining to sell more. As to the price per front foot, there is an irreconcilable conflict between the parties, plaintiff testifying the price was $50 per front foot and defendant and Mrs. Collins, unqualifiedly, that it was $60 per front foot or $3,000 for the lot.

Recurring to the circumstances in which the memorandum was signed. It appears that nothing had been said about making a written contract to bind the trade. Indeed, plaintiff says that when he approached this subject on what apparently was a mere social call upon defendant at her residence at night, just as he was leaving, he opened the negotiation by saying, "Mrs. Bray, all the dealings we have had in reference to this lot have been verbal. I have had my attorney draw up the contract and I will read it to you, and if after you read it, it meets with your approval I will give you my check for the consideration and close the deal." It thus appears that the attorney who drew the memorandum of sale had no information other than that imparted by plaintiff. The record also discloses that the defendant had a son, a lawyer, living at that time in Springfield, but she had not been consulted as to the drawing of the contract. The plaintiff read the writing to her, he says, but here again the testimony is hopelessly conflicting. Plaintiff says he read it as written except that on two occasions he read "Will Gottfried," instead of "said Gottfried," and his wife called his attention to the mistake. He says then he handed it to Mrs. Bray and she put on her glasses and began to read it aloud and made the same mistake he had made and

she then read the balance to herself, and said, "I guess
it is all right, Mr. Gottfried," and said, "I havn't any
pen and ink in the room," when he said, his pencil
would do as well, and she signed it, and he then entered
up a check for $50 and gave it to her, and she said,
"This is not signed," and he begged her pardon and
signed it. Opposed to this testimony, both Mrs. Bray
and Mrs. Collins testified plaintiff did not read the in-
strument as it afterwards proved to be, but told Mrs.
Bray it was just a receipt for $50 for part of the pur-
chase price for the fifty feet of ground; that as he read
it there was nothing in it about depth of the lot nor the
price he was to pay. Mrs. Bray says that when he of-
fered it to her to read she told him she could not see
with the glasses she was wearing at the time, and her
eyesight was not good at night any way, and she signed
the paper upon his representation that it was merely
a receipt for $50 to bind the bargain. She had never
thought of making a contract and had never talked of
making one; it was a cash sale. That she afterwards
furnished the abstract and had her son, Mr. Vint Bray,
prepare the deed to the lot as she understood the trade
and for $3,000 and tendered it to plaintiff, whereupon
he declined it and brought this suit. It appears that
when the dispute arose as to the contract, Mrs. Bray
attempted to see the paper she had signed, but plain-
tiff denied having it and referred her to his attorney
who said he did not have it but had a copy of it; that
plaintiff said to defendant's son that "I have got an
*ironclad contract* here for fifty dollars a foot."

Specific performance is not decreed as a matter
of course. The fact that the plaintiff is able to estab-
lish a contract valid at law is not alone sufficient to
entitle him to a decree. It has often been said by this
court that a decree for specific performance rests in the
sound, not arbitrary, discretion of the court, and it is
well established that a court of chancery often refuses

specific performance of a contract which it would not set aside.  [Mortlock v. Buller, 10 Ves. Ch. 308; Seymour v. Delancey, 6 Johns. Ch. 222; Jackson v. Ashton, 11 Pet. (U. S.) 248.]  The underlying considerations are stated by Kerr in his work on Fraud and Mistake, (Amer. Ed.), 357 and 358, as follows: "Where the aid of a court of equity is sought by way of specific performance of a contract, the principles of ethics have a more extensive sway than where a contract is sought to be rescinded. . . . Where a party calls for specific performance, he must, as to every part of the transaction, be free from every imputation of fraud or deceit," and "must show that his conduct has been clear, honorable and fair." [Kelly v. Railroad, 74 Cal. l. c. 563; Railroad v. Reno, 113 Ill. l. c. 43, 44; Pinner v. Sharp, 23 N. J. Eq. 274.]  In the last-cited case, the Supreme Court of New Jersey comments upon the great want of prudence on the part of the vendor in signing a document drawn by a stranger with interest adverse to his own without reading it himself and without submitting it to an adviser, and without keeping a copy, but says, "That he did so, is certain.  The latter fact may serve, perhaps, to make it more credible that he signed upon a general assurance and belief of its purport, and without attending to a possibly hasty, imperfect or unintelligible reading."  Proceeding to say that written instruments executed voluntarily by competent parties are not to be lightly impeached and that the fraud or deception must be clearly established, adds: "This, however, is not a suit by the defendants to have the contract annulled, but an application to the extraordinary jurisdiction of equity to enforce it.  A contract, though valid in law, and sufficient for the recovery of damages, may not be such as equity will decree to be performed."

Measuring the plaintiff's conduct by the foregoing standards, did he bring himself within the principles

therein announced? It must be borne in mind that plaintiff was the moving party. Mrs. Bray had indicated no desire to sell a part of her residence lot. He accosted her on the street and it is clear that nothing definite had been agreed upon, but he was to go to the lot, and did go, and when he went Mrs. Bray pointed out to him where the 220 feet would reach and said she would not sell more in depth. The testimony of plaintiff as to this conversation is lacking in that open, candid and fair tone that equity demands. Over and against the unqualified, positive testimony of Mrs. Bray and Mrs. Collins, he opposes his statement about the extra six feet taking her chicken coop, but was driven to admit that he said that "it was a small matter," thus impressing Mrs. Bray with the belief that at least on this point he acceded to her terms. We think the great preponderance on the amount of land she agreed to sell him was on the part of the defendant. On the vital point of the execution of the document upon which he bases his demand for specific performance, we think the evidence for plaintiff falls short of that fair, clear and honorable conduct which the books require. He was a business man dealing with an old woman. After viewing the lot, and obtaining her terms, if he was unwilling to trust her verbal contract, he should have made known to her his desire to have the contract reduced to writing and requested her to have a conveyancer or attorney prepare the same, or at least, if he wanted to draw it himself, had her attention drawn to the preparation of the paper. No intimation had been given by him to her that he intended to have his own lawyer draw the agreement upon his *ex parte* statement of what the agreement was. Mrs. Bray says nothing was said about a contract and if there had been she would have consulted her own lawyer and as her own son was an attorney in the city, nothing would have been more natural. But

instead of advising her of his desire for a written
contract, he had his own counsel prepare this docu-
ment.    When he went to defendant's residence, he
did not approach this important business in a busi-
ness way.    On the contrary he and his wife spent an
hour or two in a social manner, and just as he was
leaving broached the subject and asked her to sign a
receipt for $50 to bind the bargain, and when told she
could not read it, volunteered the reading himself,
leading her to believe it was mere receipt for a part
of the purchase money.    Even if read as written the
circumstances were such as to throw Mrs. Bray off of
her guard and in the language of the New Jersey Su-
preme Court, to lead her to act upon his assurance of
its purport and to fail to give a close attention to ''a
possibly hasty, imperfect and unintelligible reading
of the instrument.''    That Mrs. Bray understood she
was only to deed a lot 220 feet deep and was to receive
$3,000 for it, her conduct, before any controversy had
arisen, strongly supports.    And the conduct of plain-
tiff in refusing to let her see the document smacks
strongly of unfair dealing.

In our opinion the testimony does   not   entitle
plaintiff to a specific performance of the contract evi-
denced by the memorandum.    We think he has not
overcome the proofs by defendant that she never know-
ingly executed it in the form it is now, either as to the
description of the lot, or the purchase price.

As to the fact that our learned brother on the cir-
cuit has reached a different conclusion we need only
add that this court does defer in a large measure to the
judgment of the trial court on findings of fact, but
we have often in equity cases ruled that such a find-
ing is not conclusive upon us; otherwise, appeals in
chancery causes would be idle formalities.    [Benne v.
Schnecko, 100 Mo. l. c. 257 and 258; Blount v. Spratt,
113 Mo. l. c. 54; McMurray v. McMurray, 180 Mo. l. c.

533; Ryan v. Dunlap, 111 Mo. 1. c. 618; Glasgow Milling Co. v. Burnes, 144 Mo. 1. c. 196.]

Upon a careful review of the whole record, we think the plaintiff was not entitled to have the contract set forth in the memorandum specifically enforced. Defendant offered to convey in accordance with the contract she made, but is not bound by the document to which she never knowingly and understandingly gave her assent.

The judgment is reversed with directions to the circuit court to dismiss plaintiff's bill at his costs, and require defendant to return the plaintiff's check for $50.

*Fox, P. J.,* and *Burgess, J.,* concur.