PERCY O. EISENBEIS and RUTH C. EISENBEIS, Appellants, v. JOHN J. SHILLINGTON.—159 S. W. (2d) 641.

Division Two, October 25, 1941.

Rehearing Denied, March 13, 1942.

*Bryan, Williams, Cave & McPheeters* for appellants.

*Jackson F. Adams* for respondent.

BOHLING, C.—Percy O. Eisenbeis and Ruth C. Eisenbeis, husband and wife, as vendors, seek the specific performance of a contract to purchase certain described real estate by John J. Shillington, vendee, who by cross-bill prayed for a rescission of said contract of purchase and the return of $200, earnest money deposit. The chancellor, nisi, being of opinion the parties should seek their remedy at law, denied the prayers of the vendors' petition and the vendee's cross-bill, and dismissed said petition and said cross-bill. The vendors appeal, asserting they made out a clear case for specific performance, defendant failed to establish any of the four affirmative defenses pleaded, which admittedly included, among others, the defenses of a mistake of fact and fraud and misrepresentations on the part of the vendors' agent with respect to the restrictions of record against the property, and contend that specific performance should have been granted as matter of right and not denied as matter of discretion.

Ruth C. Eisenbeis, on June 21, 1938, contracted with Arthur W. Chapman to acquire "Estate No. 2 of Algonquin Estates," an unimproved lot in St. Louis County, Missouri, the real estate involved, which transaction was to be consummated on or before August 5, 1938. Robert B. Rogers, a real estate broker, employed by A. T. & Whitelaw Terry, conducted the negotiations between Mr. Eisenbeis and Mr. Shillington. On July 15, 1938, Mr. Shillington was informed by Mr. Rogers that if he desired to purchase the matter was urgent; that he would have to act quickly as there were other offers, one of which was in excess of his. At Rogers' instance Shillington signed an instrument, prepared on the stationery of A. T. & Whitelaw Terry, and showing "A. T. & Whitelaw Terry, Agents" as the first signers thereof. It was in the nature of an earnest money contract. Mr. Shillington's consent thereto was evidenced by his signature to a paragraph immediately following the signature of "A. T. & Whitelaw Terry, Agents." This instrument recited, among other things, that the vendee had deposited $200 earnest money and had purchased the real estate involved for $4,750, subject to the approval of the owner; that it was conditioned upon the consummation of the contract dated June 21, 1938; that the title was to be perfect of record and in fact,

and conveyance was to be made by warranty deed, containing the usual covenants of warranty, excepting, so far as material here, "restrictions, reservations and conditions now of record;" and that the transaction was to be consummated on or before August 16, 1938. This was taken to Mr. Eisenbeis by Rogers. Eisenbeis, over his and his wife's signature, by him, approved the sale and agreed to pay A. T. and Whitelaw Terry the broker's commission.

The Chapman-Eisenbeis contract was consummated August 4, 1938.

A month or two prior to the contract of July 15, 1938, Rogers had talked to Shillington about the property. The matter was not pushed, Rogers testifying the vendee did not show any great enthusiasm. Sometime after the first of July, Rogers again talked to the vendee. Shillington mentioned to Rogers the kind of residence he desired to construct, informing Rogers he was not in a position to spend and could not afford to spend more than $14,000 for a residence. On one of these occasions Mr. Rogers had a plat with him. This plat, we understand from Rogers' testimony, had been made by a young architect in an endeavor to induce Rogers to build houses in Algonquin estates. It had the figures $20,000 ▮▮▮▮ written on it in connection with "Estate No. 2" and Rogers, in answer to inquiries, stated to the vendee that was a restriction on the lot but that a house costing $14,000 could be constructed on the lot. The vendee testified that he was in the box business and his knowledge of the effect of building restrictions on real estate was limited; that Rogers told him he could build a $14,000 house on the lot; that Rogers did not state this as his opinion but as a fact—"that it would be possible to build a $14,000 house on that lot," explaining that the house on Estate No. 1, subject to the same restriction did not cost $20,000 in his opinion; that said lot owner had not lived up to the restriction and neither he nor anyone else could enforce it and also that such restrictions were very often non-enforceable; and that otherwise he would not have contracted for the lot.

Rogers denied telling Shillington that he could erect a $14,000 residence on the property; but there was some discussion of the matter as he testified he was not attempting to mislead the vendee, explaining, among other things: that the opinion "of the trustees" would govern; that restrictions of this nature were usually flexible; that it is a restriction as to the appearance and acceptability of the house as much as anything; that often the price does not enter at all; one man builds a house for $14,000 that looks like $20,000, while another will build a house for $38,000 that looks like an $8,000 house.

A comparatively short time after the date for performance, the vendee consulted Mr. Chapman and his (the vendee's) attorney and ascertained, at least inferentially, that a $20,000 prima facie valid restriction as to residences existed against the lot. He thereupon notified the vendors he would not perform the contract of purchase.

■ A vendor may have specific performance of a contract to purchase land on the theory, in this State, of mutuality of remedy. [Paris v. Haley, 61 Mo. 453, 457.] Mutuality of remedy has been said to be essential to a decree of specific performance. [Falder v. Dreckshage (Mo. App.), 227 S. W. 929, 935[3]; see Missouri Annotations, Restatement of Contracts, Sec. 372.] We need not inquire if this be sound law in every instance. Consult Tebeau v. Ridge (Banc), 261 Mo. 547, 567(V), 170 S. W. 871, 876[5], L. R. A. 1915C, 367, as well as the case therein overruled, which are, so far as material, to the effect that a vendee may, if he so elect, have specific performance of a contract to convey land by a husband although the husband, by reason of his wife's failure to contract and refusal to join in the conveyance, is unable to convey the precise estate contracted for.

■ In support of their position that they made a case for specific performance as a matter of right, and not as a matter of mere discretion, the vendors stress Beheret v. Myers (Banc, 1912), 240 Mo. 58, 77, 144 S. W. 824, 830[8], stating: "The rule is that specific performance is somewhat of grace as over against a hard and fast matter of absolute right. The chancellor has discretion to perform or not to perform. But he has studied the law of specific performance to little purpose who supposes that discretion may be exercised without reason and of caprice. The discretion to be exercised is a sound (that is) *judicial* discretion. It is exercised against performance when plaintiffs come into a court of equity with unclean hands; or when the contract is incomplete or so ambiguous as to be uncertain in terms and intendment; or where the contract is unfair, overreaching, biting; or when there are present (in pleadings and proofs) elements of mutual mistake in matter of substance, covinous contrivances, fraud, imposition, surprise or accident, as those terms are understood in the law. Absent such features and present a fair, plain contract, one complete and certain in terms and intendments, specific performance goes as a matter of right." This was said arguendo upon an appeal by a vendor of land in answer to the contention (consult l. c. 72(5) and 828(5), respectively) that the vendee's only remedy was at law and in decreeing specific performance the chancellor nisi had unsoundly exercised his discretion. There the vendee sought a conveyance of land. Here the vendors seek the specific performance of the acceptance of a deed and payment of the purchase price money. The situation differs somewhat. The observation is to be read in the light of the issues presented and determined. It is a more detailed statement of the rule, not necessarily always followed in hard cases where relief can be awarded by money damages, that specific performance of a contract complete, fair and untainted by fraud or other vice generally goes as a matter of right. Rombauer v. Compton Heights ■ Christian Church (1931), 328 Mo. 1, 20, 40 S. W. (2d) 545, 554[16]. Attend the remarks

114

of LAMM, J., the author of the Beheret opinion, in his dissent in Aiple-Hemmelman Real Est. Co. v. Spelbrink (Banc, 1908), 211 Mo. 671, 721(I), 111 S. W. 480, 494(1), conforming to the majority opinion on the observation (l. c. 710 and 490, respectively): "It may be said that specific performance is somewhat of grace, i. e., the chancellor is entitled to exercise a discretion, he must seek equity and do it— not inequity—and, hence, specific performance will not go as of course and as a mere hard and fast matter of absolute right." Many cases recognize this. Frederich v: Union El. L. & P. Co., 336 Mo. 1038, 1051[2], 82 S. W. (2d) 79, 85[4], citing cases. [Consult West, Mo. Dig. Specific Performance, Secs. 8 and 16.]

"A court of equity is never compelled to render an inequitable decree, however plain and valid may be the contract sued on. . . . Equity may require that a party accept damages in lieu of specific performance, and may refuse the equitable remedy of specific performance and remit the party asking it to an action at law for damages. Such discretion is not to be used capriciously, but soundly and sparingly, and only when it is clear that a wrong would be done to grant specific performance. . . . Specific performance of a contract will be denied in any case where such a decree would be inequitable under all the circumstances. . . . And . . . it may be denied even when no fraud or mistake appears, where to grant it would inflict such a burden or hardship on the defendant as would be inequitable and unjust." Rockhill Tennis Club v. Volker, 331 Mo. 947, 969, 56 S. W. (2d) 9, 18[7, 8]. These observations have been said to be well settled law. Frederich v. Union El. L. & P. Co., supra; Lemp Hunting & Fishing Club v. Hackman, 172 Mo. App. 549, 571(VI), 156 S. W. 791, 798[5, 6]. Greater strength of case is required for a decree of specific performance than to defeat specific performance. McElroy v. Maxwell, 101 Mo. 294, 306, 14 S. W. 1, 3; Hargis v. Smith (Mo.), 178 S. W. 72, 75[2]; Ranck v. Wickwire, 255 Mo. 42, 61(VII), 164 S. W. 460, 466[11, 12]; Isaacs v. Skrainka, 95 Mo. 517, 524, 8 S. W. 427, 429; Veth v. Gierth, 92 Mo. 97, 104, 4 S. W. 432, 435. The principles of ethics have greater weight in an action seeking the extraordinary and discretionary remedy of specific performance than in an action for rescission and contracts valid at law and sufficient for the recovery of damages are not necessarily specifically enforceable. [Gottfried v. Bray, 208 Mo. 652, 660, 106 S. W. 639, 642.] A misrepresentation of fact, innocently made, may defeat specific performance. [Isaacs v. Skrainka, supra.] We have considered that equity would relieve from a mutual mistake of law and fact (Griffith v. Townley, 69 Mo. 1) or a mistake of law (Shanklin v. Ward, 291 Mo. 1, 19, 236 S. W. 64, 68 [3], made with respect to the title of land in contracting. [See 58 C. J. 963, Sec. 144; 19 Am. Jur., p. 82, Secs. 64 and 69.] Specific performance may be denied on the ground defendant did not intend to make the

115

contract sued on or for unilateral mistakes of fact (Frederich v. Union El. L. & P. Co., supra; Gottfried v. Bray, supra), or where the thing bought is different from what the party intended (Veth v. Gierth, supra), or where the party has been overreached and contracted in circumstances of surprise or undue solicitation (McElroy v. Maxwell, supra). Gurley v. Hiteshue, 5 Gill (Md.), 217, 223, states: "A court of equity, professing as it does to lend its aid exclusively to cases in which a claim can be conscientiously enforced, will never coerce the specific performance of a contract for a party who has not acted fairly, openly, and without suppression of any important fact or the expression of any falsehood. Whether with a fraudulent design or innocently, yet if a false impression has been conveyed and made the basis of a contract, this extraordinary jurisdiction of the court will not be exercised by coercing specific performance." Consult Bowker v. Cunningham, 78 N. J. Eq. 458, 79 Atl. 608, 610[5, 6]; Muller v. Weiss, 91 N. J. Eq. 321, 109 Atl. 357[1]; Bray v. Briggs, 26 L. T. N. S. 817, 819; Annotations 87 A. L. R. 1345.

The authorities demonstrate that untrue and misleading statements inducing action may forestall the remedy of specific performance. The issue may pivot on the fact that defendant has been misled, as well as the commission of a legal fraud by the person making the representation. The better reasoned cases recognize distinctions between suits in equity for specific performance and for other equitable remedies and for damages at law. The denial of specific performance does not ▮▮▮ necessarily render the contract void. It may merely determine that in all the attending circumstances it is not in furtherance of good conscience to specifically enforce the instrument. The plaintiff still has, in a proper case, his remedy at law. The litigants proceeded on the theory the lot was subject to a restriction for residences costing $20,000. An exhibit prima facie established such a restriction. The representations of Rogers related to an existing condition, i. e., that at the time they were made, as well as later, the lot was subject to the erection of a residence costing $14,000. The representations naturally might be expected to promote a sale to respondent and must have been intended to be accepted by him as statements of fact. As mentioned supra, specific performance in proper instances has been denied because of a mistake of law; such as a mistake with respect to the title of real estate, which some authorities consider, where all the facts are not known, to involve a mistake of fact. The representations related to appellants' existing title to the lot, the subject matter of the contract sought to be enforced, and appellants are sufficiently chargeable with their agent's actions to preclude our interference with the decree denying specific performance. [Consult Millard v. Smith, 119 Mo. App. 701, 711(2), 95 S. W. 940, 942(2); Connecticut Mut. Life Ins. Co. v. Carson, 186 Mo. App. 221, 229, 172 S. W. 69, 71.] Pomeroy on Specific Perform-

116

ance (3 Ed.), Sec. 278, states, after mentioning that fraud on the part of agents of corporations is necessarily imputed to the corporation and the conflict of opinion as to a principal's liability for fraud of an agent generally in an action at law for deceit or a suit in equity for rescission (citing among others, Hern v. Nichols, 1 Salk. 289): "There can be no doubt, however, that in accordance with the general principles upon which equity administers this, its peculiar remedy, such fraud is a sufficient ground for refusing to decree a specific performance." Beberet v. Myers, 240 Mo. 58, 83(g), 144 S. W. 824, 832[19], contains an observation to the effect that the issue of an agent exceeding his authority is affirmative and should be pleaded. Appellants' reply was a general denial.

It is of importance to bear in mind that here vendors seek the specific performance of a contract of sale by the vendee and have appealed from a decree denying performance. From the evidence the vendee contracted intending to erect a residence costing $14,000. He informed the vendors' agent of such intention, made known his objection to a restriction of $20,000 and stated he could not afford the expenditure of a greater sum than $14,000 for a residence. The vendee was misled. The representations made may not have established legal fraud but they fell, we think, within the broader allegations of the pleaded defenses of mistake, misrepresentation and fraud. If not, the chancellor might have authorized an amendment (consult Berg v. Moreau, 199 Mo. 416, 426, 97 S. W. 901, 904, 9 L. R. A. (N. S.) 157) that equity, justice and right prevail. With an action at law available to appellants, with equity with the respondent, and taking cognizance of more delicate distinctions between right and wrong than may be had in courts of law, this record does not warrant our reversing outright the findings and decree nisi, compelling respondent's performance of the contract of purchase and subjecting him to probable additional litigation if he might defeat the prima facie restriction shown.

Let the judgment and decree be affirmed. It is so ordered. *Westhues* and *Barrett, CC.,* concur.

PER CURIAM:—The foregoing opinion by BOHLING, C., is adopted as the opinion of the court. All the judges concur.