Earl M. RAGAN et al., Respondents,

v.

Glen A. SCHREFFLER et al., Appellants.

No. 46093.

Supreme Court of Missouri,
Division No. 1.

Nov. 12, 1957.

Russell N. Pickett, Eugene E. Andereck, Phil Hauck, Pickett, Andereck & Hauck, Trenton, for appellants.

R. Leroy Miller, Trenton, for respondents.

VAN OSDOL, Commissioner.

This is an action for specific performance of a contract completed upon the election to accept an option to purchase a described tract of two hundred forty acres of farm land in Mercer County. The option was executed in contemplation of a loan to be insured or made by the United States. The trial court found the issues in favor of plaintiffs, Earl M. and Katherine Ragan, optionees-purchasers; entered a decree requiring defendants, Glen A. and Letha Schreffler, optionors-vendors, to execute a warranty deed conveying the described lands to plaintiffs; and rendered judgment for plaintiffs in an accounting of rentals. Defendants have appealed.

Herein upon appeal, defendants-appellants contend the trial court erred in decreeing specific performance. It is asserted the contract was not supported by a consideration; and did not represent the understanding of the parties.

In the review of this case, an action in equity, it is our duty to consider and weigh the evidence, make our own findings and reach our own conclusions, taking into account, however, the trial chancellor's superior position to determine the credibility of the witnesses who appeared before him.

In this case, in examining the evidence and in determining the parties' contentions, it is necessary to state the circumstances of the execution of a memorandum agreement entered into September 24, 1955, six days prior to execution of the option to purchase, September 30, 1955.

In August, 1955, defendant Glen A. Schreffler advised one Bert Arnote, a real-estate broker of Princeton, that defendants desired to sell their farm for $100 per acre. Arnote testified that on September 24, 1955, he accompanied plaintiff Earl M. Ragan to the Schreffler farm and, after some discussion between plaintiff Earl and defendant Glen, in which discussion plaintiff Earl indicated plaintiffs would have to procure a loan to enable them to pay the purchase price, the price of $78 per acre was agreed upon. And "I (Arnote) got an agreement there between them. That he (defendant Glen) would give Earl an option on this farm and he (defendant Glen) would bring his wife to Princeton a certain day." Whereupon Arnote "scribbled" the agreement in longhand. The agreement was signed by defendant Glen and plaintiff Earl, and was as follows,

"This agreement made and entered into this 24 da of Sept by and between Glenn Schressler party of the first part and Earl Ragan party of the second part where by party of the First part ,sells his farm of 240 acres * * * for ($78.00) seventy eight dollers pr acre to second party—second party to secure a Government loan and pay on or before
January
fore March 1st 1956 at time of delivery of clear Deed abstract & possession March 1, 1956."

As the quoted memorandum agreement shows, the word "March" was stricken and the word "January" inserted by interlineation. Apparently the word "at" was also stricken. There was a conflict in the testimony as to the reason for striking the word "March" and interlining the word "January." It was the testimony of the broker Arnote that the date "January" 1, 1956, was intended to indicate the date defendants were to be assured that plaintiffs' loan application was approved so that defendants could give their tenant, one Meinke, timely notice of their intention to terminate the tenancy on or before February 28, 1956. The witness Arnote testified,

"Q. Getting back to this agreement * * * you wrote the agreement up, yourself, out to the farm?

"A. I did, all there at the car and I just scribbled that agreement in the car and read it to both of them. Earl says all right and Mr. Schreffler said, 'We will get to give possession the first of March, I want to know about it before the first of the year because of my renter.' So I added that on, both saw me add it on, that he was to be notified the first of the year whether Earl would get the money or not.

"Q. Did Mr. Schreffler sign that?

"A. Yes, sir, he signed it, himself, and Earl signed."

But defendant Glen testified, in effect, that the change in date was made with the intention that the purchase price was to be paid in "ninety days"; although, as the memorandum agreement provided, a deed, abstract and possession were to be delivered March 1st.

Very soon after the execution of the memorandum agreement, plaintiffs made application for a Farmers Home Administration loan, and, as indicated supra, the contract of which the trial court decreed performance was the contract resultant of an election to accept the "Option for Purchase of Farm with a loan insured or made by the United States of America," executed by defendants and plaintiffs, by which defendants, the Schrefflers, for the recited consideration of "One Dollar in hand paid and other valuable considerations, the receipt and sufficiency of which are hereby acknowledged," granted to plaintiffs the exclusive option to purchase the described lands for the stated price. The option (executed September 30, 1955, as stated) was irrevocable for a period of three months from the date thereof. The option instrument contained the express provisions that abstract of title was to be delivered "when required" and that the "seller" was to provide title insurance. When defendants first learned of the provision relating to title insurance, they refused to execute the option; but, when assured by the broker Arnote that they would be saved the expense of such insurance, defendants signed and acknowledged the option instrument.

The Farmers Home Administration loan to plaintiffs was approved December 8, 1955; and on December 16th plaintiffs mailed notice to defendants of plaintiffs' acceptance of the option. The notice was received by defendants December 28, 1955. There was evidence that, meanwhile and sometime prior to December 17, 1955, the Farmers Home Administration was requiring an abstract of title and that defendants failed to comply with the terms of the option agreement that an abstract of title was to be provided by them when required. The witness Arnote testified that when a request was made of defendant Glen for an abstract of title, he remarked, "What have I gotten into. I can't buy the other farm." Thereafter the witness Arnote received a letter dated December 17th, signed by defendant Letha, as follows, "As we can not get the money on the farm until the 1st of March we have called the sale off, as I have the farm rented until the 1st of March and I will not move them out until the time is out —and if I can't get the money until then that will call my deal off so I am sorry."

As we have noticed, the memorandum contract of September 24th as interlined provided that a government loan was to be secured by the second party "and pay on or before January 1, 1956"; and that the time of delivery of a conveyance, abstract of title and possession was March 1, 1956; whereas the option agreement provided for the delivery of an abstract of title "when required," possession on March 1, 1956, and payment of purchase price upon the recording of a deed.

■■ The trial court found the facts to be that defendants were fully aware of "general terms and provisions of said option for the purchase of said farm before and at the time they affixed their signatures to it. And the Court finds that they fully understood the pertinent provisions thereof and that said preliminary agreement of September 24, 1955, became fully merged and a part of, so far as applicable, the new agreement. And all conflicting provisions to be resolved and governed by said new contract * * *." We have the opinion the trial chancellor, having found that defendants fully understood the pertinent provisions of the option to purchase, was correct in finding that the parties must be held to have intended that the agreement of September 24th was modified, merged in or superseded by the option agreement insofar as the terms of the two instruments were inconsistent. The option agreement treated with the same subject matter as the memorandum agreement of September 24th, and definitely and unambiguously stipulated the time of delivery of an abstract of title and time of payment of purchase price, all in compliance with the Farmers Home Administration procedural requirements for a loan which the parties had contemplated in their memorandum agreement of September 24th. Generally, those who make a contract may unmake it or substitute another, either wholly or partially inconsistent, and if the second contract be valid it will supersede or modify the first to the extent that the two cannot stand together. Rice v. Provident Life & Accident Ins. Co., 231 Mo.App. 560,

102 S.W.2d 147; Howard v. Scott, 98 Mo. App. 509, 72 S.W. 709; see also Munford v. Wilson, 15 Mo. 540. Indeed, defendants-appellants do not seriously contend the option agreement, if valid and enforceable, did not modify or supersede the agreement of September 24th. But they contend they did not understand that the option agreement superseded the agreement of September 24th and contained stipulations as to time of delivery of abstract of title, and time of payment of purchase price. In effect, defendants-appellants contend the option agreement, as a contract of sale upon acceptance, was invalid and unenforceable because of want of reality of assent. We shall examine this contention infra.

■ We have hereinbefore noted the consideration recited in the option instrument. There was evidence introduced by defendants that the recited nominal consideration of one dollar was never paid. However, the recital of the nominal consideration was modified by the clause "and other valuable considerations," and so may be treated as mere surplusage. The clause "and other valuable considerations" is open for investigation and explanation. Finley v. Williams, 325 Mo. 688, 29 S.W.2d 103. We repeat, defendants were desirous of selling their land, and the offer or option to purchase in fact recited that it was given to enable plaintiffs to obtain a loan "for the purchase of said land." We are of the opinion that plaintiffs' efforts to procure the loan were sufficient consideration for the option; indeed, in the option agreement it was agreed that "the Buyer's efforts to obtain such a loan constitute a part of the consideration for this option."

■ An option is a complete bilateral contract with mutuality of obligation upon the optionee's election to accept the option. Until the optionee so elects there is no enforceable contract, the option being in effect but an offer, although an offer binding on the optionor until the time stipulated for the election has expired by virtue of the consideration paid for the option.

Chapman v. Breeze, 355 Mo. 873, 198 S.W. 2d 717. It is essential to the validity of an option that it be supported by a consideration, and the consideration for the option is a thing apart from the consideration for the sale of the land. But, in accordance with the general principles of contract the consideration for an option is not necessarily to be paid in money, it may consist of some promise or undertaking of the promisee, or optionee, to incur some trouble or expense, or to do or not to do some lawful act in consideration of which promise or act on the part of the optionee the promisor, or optionor, promises that his offer shall be left open for a specified time. 55 Am.Jur., Vendor and Purchaser, §§ 32 and 33, pp. 502–504.

■ The contention that the option to purchase was not supported by a consideration is resolved adversely to defendants-appellants. Likewise, the contentions that the memorandum agreement, standing alone prior to the execution of the option instrument, and the contract completed upon the acceptance of the option to purchase were not supported by any consideration actually paid by plaintiffs at the time the respective instruments were completed are ruled adversely to defendants-appellants. It is the recognized general rule that a promise by one party to a contract is a sufficient consideration for a promise by the other party. If, therefore, there is a promise on the part of a purchaser to buy and pay the purchase price, this itself is a sufficient consideration for the promise of a vendor to sell and convey.

But, as stated, defendants-appellants contend the option agreement did not represent the understanding of the parties.

Defendant Glen, sixty-two years old, testified that he cannot read, and he and defendant Letha testified the option instrument was not drafted in their presence; its terms were not explained to them; and nothing was said to indicate the option agreement "was to be a substitute for" or supersede the agreement of September 24th.

They testified it was their "understanding of what" they were signing was to "get a Government abstract. To furnish the abstract so the boy could get the money to buy the house is my understanding." In this connection, the County Supervisor of the Farmers Home Administration testified that he personally had talked to defendants concerning the option, and had overheard his secretary explain the terms of the Government option to defendant Glen. The witness thought defendant Letha was present. The secretary explained "what it contained and meant. * * * Well, they discussed the length of time of the option and about any side agreements, there was to be no side agreements." And the attorney, before whom defendants acknowledged the option instrument, advised defendants that the document "is a Government option to buy the place. * * * I guess you got the place sold."

■ A general rule, absent fraud, accident or mistake, a person cannot avoid a written contract on the ground that he did not attend its terms, or that he supposed it was different in its terms, or that it was a mere form. Poe v. Illinois Cent. R. Co., 339 Mo. 1025, 99 S.W.2d 82; Brennecke v. Ganahl Lumber Co., 329 Mo. 341, 44 S.W.2d 627. But we realize that principles of ethics have greater weight in an action seeking the extraordinary and discretionary remedy of specific performance than in an action for rescission, and contracts valid at law and sufficient for the recovery of damages are not necessarily specifically enforceable. Eisenbeis v. Shillington, 349 Mo. 108, 159 S.W.2d 641; Gottfried v. Bray, 208 Mo. 652, 106 S.W. 639. And it has been written that specific performance will ordinarily be denied if it is doubtful whether there has ever been a meeting of minds or a full and complete understanding on all the essential terms of the contract sought to be enforced. 81 C.J.S. Specific Performance § 41, p. 516.

■ In our case, however, there was no evidence of fraud or misrepresentation; no

evidence that defendants were overreached in any way; and no evidence that the purchase price, $18,720, was not a fair consideration for defendants' farm. Although the evidence indicates defendant Glen cannot read, the evidence shows that defendant Letha can; and the evidence further shows defendant Glen was not inexperienced in business transactions—he has bought or sold six or eight other tracts of land in his time. The testimony tending to show the discussion and explanation of the terms of the option instrument prior to its execution by defendants (taken into consideration with the circumstances known to defendants of the planned procurance by plaintiffs of the government loan to obtain money to pay defendants for their farm) is convincing, if believed, that defendants were aware of and understood the essential terms of the option for purchase with loan insured or paid by the Government. It is true defendants testified to the contrary; but the trial chancellor was in a position to observe them and their demeanor when they were on the witness stand and to judge their credibility. The transcript on appeal also shows that one of the defendants, by deposition prior to trial, denied having signed the option instrument, and denied receiving the notice of election to accept the option. A close reading of the whole record discloses evidentiary support for the inferences that defendants had planned to buy another farm, but were unable to consummate the deal; refused to provide abstract of title when required, as provided in the option instrument; and sought to avoid their contract with plaintiffs by mistakenly relying upon the language of the carelessly and ineptly prepared and superseded agreement of September 24th, particularly the language thereof, including the interlineation, relating to the time of payment of purchase price and delivery of deed and abstract of title. Giving deference to the findings of the trial chancellor on the conflicting verbal evidence, there is nothing in the transcript that calls for the exercise of the sound discretionary power of this court of equity to deny the relief plaintiffs seek.

The trial court's judgment and decree should be affirmed.

It is so ordered.

COIL and HOLMAN, CC., concur.

PER CURIAM.

The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court.

All of the Judges concur.