## NICHOLAS J. BEHERET et al., v. GEORGIA MYERS et al., Appellants.

### In Banc, February 9, 1912.

1. **PLEADING: Cause of Action: Objection Raised First in Motion in Arrest.** A challenge to the petition on the threshold stands on a better foot than a challenge after a verdict or judgment. In support of a decree under such circumstances, the bill will be viewed with a less critical eye than if challenged *in limine* by demurrer. If, however, the bill is so radically bad as to state no cause of action, such defect is in its nature jurisdictional and may be raised on appeal for the first time, where the defects are of a character not cured by the Statute of Jeofails.

2. **AGENCY CONTRACT TO SELL LAND: Expired by Terms.** A contract made by the owners authorizing an agent to sell land by written contract, agreeing, in case of their desire to withdraw the land from the market, to give the agent a written notice of thirty days prior to such withdrawal, and agreeing to pay said agent twenty-five dollars for advertising "should we withdraw said property from sale before January 1, 1905," did not by its terms expire on January 1, 1905. As between the owners and agent, thirty days' written notice was necessary to revocation; and absent revocation or matters of estoppel, the agent had the power in September, 1906, to bind the owners by a written contract of sale made in their name.

3. ————: ————: **Understanding of Parties.** And said contract being unambiguous and its meaning clear and unequivocal, its terms cannot be varied by oral testimony of all the owners of the land that they severally understand that it expired automatically on January 1, 1905, and that they intended to say so in the contract—especially where there is nothing in the origin of the contract to invite criticism.

4. ————: ————: **Verbal Agreements and Understandings: Merged in Written Contract: Mistake.** All prior or contemporaneous verbal agreements and understandings are merged in the written contract, and cannot be permitted to vary its unambiguous terms. However, for mistakes, fraud, imposition,

surprise or accidents, relief may be had against the contract itself, but to obtain that relief the pleadings must raise the issue, and the proof must respond to the pleadings.

5. ——————: **Specific Performance: Judicial Discretion.** Courts of equity exercise a discretion in decreeing specific performance of a contract to sell land or to award damages for its breach. But that means a sound judicial discretion. It is exercised against specific performance when the purchaser comes into court with unclean hands, or when the contract is incomplete or so ambiguous as to be uncertain in terms or intendment, or where the contract is unfair, overreaching or biting, or where there are present (in pleadings and proof) elements of mutual mistake in substantive matters, covinous contrivances, fraud, imposition, surprise or accident. But absent those things, and present a fair, plain contract, complete and certain in terms and intendment, specific performance goes as a matter of right.

6. ——————: ——————: **Varying Terms of Power: Incidents of Exercise.** When a main power is granted by the owner to an agent to sell land, incidents essential or usual to the exercise of that power are also granted—the greater includes the less by necessary implication. But a substantial departure from both the express and implied power in the agent's contract of sale with the purchaser, does not bind the owner. The contract authorizing the agent to sell provided that the agent was to receive one dollar per acre "out of the first moneys collected" and the "terms of sale to be cash when deed is transferred." The contract of sale was made in September, one thousand dollars to be paid in cash, the balance "when deed and possession is delivered on or before March 1st," and the purchasers to be allowed three per cent interest on the $1000 from the date of sale "to the delivery of the deed and possession of the land." The farm was rented under a lease expiring March 1st, and tender of the balance of the purchase price was made prior to and on March 1st. *Held,* that the terms for the delivery of a deed and possession on March 1st, the payment of the one thousand dollars to the agent who timely tendered it to the vendors, the provision for three per cent interest on said thousand dollars, were not, any of them, a substantial departure from the terms of the agency contract, and do not bar specific performance.

7. ——————: ——————: **Provision for Cash Payment: Compliance.** If the vendee is to pay for the vendor's land at the time the deed and possession are delivered, and he pays a part on the day the contract of sale is made, and the balance on or before that day, that arrangement results in a cash transaction and meets the contract intendment.

8. ——————: ——————: ——————: **Payment to Agent.** If the vendee paid the purchase price in cash to the vendor's agent, and he

did not retain any part of it, but made timely tender of it to the vendor, the question of whether a payment to the agent was or was not a payment to the vendor, under a contract which said nothing as to whom payment should actually be made, is not open for determination.

9. ———: ———: **Cash Payment: Interest on Purchase Money: Not Pleaded.** Where the agency contract contemplated a cash payment on the first day of March, a provision in the contract of purchase that the vendee was to be allowed three per cent interest till March 1st on the cash payment made the previous September, worked no injury to the vendor, and the question of its being a variance from the agent's power is not for consideration where the pleadings raise no such issue.

10. ———: ———: **Satisfactory Deed Authorized: Warranty Deed Promised.** An agent who has authority to contract for a "satisfactory deed" has power to contract for a "warranty deed." When the vendors agreed to furnish a satisfactory deed they meant one satisfactory to the vendee.

11. ———: ———: **Description of Lands: West End of North Half: Call for Acres.** Where the contract authorizing the agent to sell "the west end of the north half (240 acres), the southeast fourth of the northeast quarter (40 acres), and the northwest fourth of the southwest quarter (40 acres) . . . containing in the aggregate 320 acres," the contract of sale describing the land as "the west end of the north half and the southeast quarter of the northeast quarter, northwest quarter of the southwest quarter .• . . containing 320 acres of land" does not describe only eighty acres, but does describe the same land described in the agency contract. A call for quantity may be resorted to for the purpose of making that certain which otherwise would be uncertain. But aside from that, the point of misdescription in the sale contract was not in this case made below.

12. ———: ———: **Defenses Not Pleaded.** Affirmative defenses to plaintiff's suit for the specific performance of a contract for the sale of land, must be pleaded. A general denial is not sufficient; it puts in issue the facts pleaded in the petition, not the liability.

13. ———: ———: **Not Acknowledged or Recorded.** A written contract authorizing an agent to sell lands is not invalid because not acknowledged and recorded. As between the parties to it, and as between the vendors and the vendees from the agent, it is valid, without either acknowledgment or registry. It must be in writing, but the statute does not require acknowledgment. Sec. 2816, R. S. 1909, spends its force in preserving for record muniments of title, and the purpose of record is to impart notice.

Appeal from Carroll Circuit Court.—*Hon. John P. Butler,* Judge.

AFFIRMED.

*F. E. Roberson* and *Doneghy·& Weatherby* for appellants.

(1) The petition does not state facts sufficient to constitute a cause of action. The agency was a special one, in writing, so provided by the statute, and the writing enumerated all the powers of the agent, and third parties in dealing with such an agent are bound to take notice of the limitations, and that the conditions would be strictly construed, and that a sale could only be made in strict compliance with the terms of the power. Dunlap, Paley's Agency, 192; Mechem, Agency, secs. 308, 273, 288; Glass v. Rowe, 103 Mo. 536; Sugden, Vendors (9 London Ed.), 250; Mechanics Bank v. Schaumberg, 38 Mo. 228; State v. Bank, 45 Mo. 528; Staten v. Hammer, 121 Iowa, 499; Stephens v. Soule, 83 Cal. 438. (2) The contract of agency only bound the defendants to make a good satisfactory deed and it so pleaded, while the contract of sale as pleaded binds the defendants to make a good and sufficient warranty deed; and leaving out the question as to whether the terms good and satisfactory deed are sufficiently definite and certain for specific performance, yet the fact remains that a good and sufficient warranty deed certainly imposed greater burdens on the defendants than was warranted by the power. Pugh v. Cheseldine, 11 Oh. 109; Ladd v. Stephenson, 43 Hun (N. Y.) 541. (3) The provisions in the contract of agency, "and if required so to do would give a clear abstract," are optional and not mutual. definite or certain, and the same vice is found in pleading the contract of sale as follows: "Ten thousand five hundred and twenty dollars when deed and possession delivered to plaintiffs on or before March 1st, 1907," and, "then in that event, the defendants to

make, execute and deliver to plaintiffs a good and sufficient warranty deed . . . and deliver the possession on or before March 1, 1907." Huff v. Shepard, 58 Mo. 247; Wiley v. Robert, 31 Mo. 212; 36 Cyc. 587; Taylor v. Williams, 45 Mo. 80; Holman v. Conlon, 143 Mo. 369; 20 Ency. Pl. & Pr., 435; Despain v. Carter, 21 Mo. 331; Lackawanna Co. v. Long, 233 Mo. 713. (4) That in a case for the specific performance of a contract to convey land the description must be sufficiently accurate that the court may ascertain the land by ordering a survey. Allen v. Chambers, 4 Ired. Eq. (N. C.) 125; Vail v. Tillman, 2 Wash. 476; Gray v. Davis, 3 Marshall (Ky.), 381; Campbell v. Johnson, 44 Mo. 247. (5) Not only does the petition show a sale on credit and in partial payments, but it pleads payment of the balance as follows, "Ten thousand five hundred and twenty dollars, when deed and possession is delivered to plaintiffs, on or before March 1st, 1907." This in addition to being a time arrangement is an optional undertaking which gave either party the option of complying with it on or before March 1st, and it is settled law that all such provisions in a contract will defeat a suit for specific performance. To entitle a party to specific performance there must not only be a valid and binding agreement but as a rule the contract, at the time it was entered into, must have been capable of being enforced against or in favor of either party. Glass v. Rowe, 103 Mo. 539; Taylor v. Williams, 45 Mo. 80; Holman v. Conlon, 143 Mo. 369; Staten v. Hammer, 121 Iowa, 409. (6) The provision "when deed and possession delivered to plaintiffs on or before March 1st, 1907," is entirely too indefinite to be the subject of specific performance. It is a fundamental proposition that in cases for specific performance the contract must be complete in all its parts; must contain all the material terms, and none of these terms must be left to be settled by future negotiation, and it must be certain as the court cannot

make a contract for the parties. 36 Cyc. 587; Huff ·v. Shepheard, 58 Mo. 247; Wiley v. Robert, 31 Mo. 212; 22 Am. & Eng. Ency. Law (1 Ed.), 1006; Lackwanna Co. v. Long, 233 Mo. 713. (7) Equity will not compel specific performance where the contract is made by an agent in a manner not authorized by the principal. Glass v. Rowe, 103 Mo. 536; Bispham's Prin. Eq., sec. 376; Railroad v. Curtis, 154. And the kind and character of contract the defendant intended to make, or that material terms were left out can always be shown by parol. Story, Eq. (3 Ed.), secs. 770, 1531; Kerr, Fraud and Mistake (Bump), p. 412; Fry, Spec. Per. (3 Ed.), sec. 721; Railroad v. Curtis, 154 Mo. 154. And the rule that the intention can be shown by parol applies, and it matters not whether the mistake was mutual, or merely that of the plaintiff or defendant alone, or the mutual mistake of their agents, or the mistake of the agent of defendant or· plaintiff alone. Pomeroy, Eq. Juris. (2 Ed.), sec. 860; Railroad v. Curtis, 154 Mo. 24. In a case for specific performance the evidence must be so clear that the court can see that there was no conflict of understanding. Veith v. Garth, 92 Mo. 97; Strange v. Crawley, 91 Mo. 287; Lapham v. Duesvogt, 36 Mo. App. 275; Railroad v. McCarty, 97 Mo. 214. It requires much less strength of case on the part of a defendant to resist a suit for specific performance than it does on the part of a plaintiff to maintain it. Rosenwald v. Middlebrook, 188 Mo. 58. The evidence disclosed that the sale was made on a stale authority, and at a time when there was a coal oil excitement in the neighborhood, which was enough to cast reflection on the transaction. McCarty v. Kyle, 4 Coldw. (Tenn.) 348; Liecester v. Royal Co., 55 Fed. 190.

L. F. Cottey and F. H. McCullough for respondents.

(1) The petition does state a good cause of action. Kilpatrick v. Wiley, 197 Mo. 123; Evans v.

Evans, 196 Mo. 1; Kirkpatrick v. Pease, 202 Mo. 471; Smith v. Allen, 86 Mo. 189. (2) A contract in writing made by a landowner with an agent, giving such agent authority to sell real estate and enter into a contract with a purchaser of such land is not required to be acknowledged and recorded. Sec. 2783, R. S. 1909; Hawkins v. McGroarty, 110 Mo. 546; Roth v. Goerger, 118 Mo. 556; Johnson v. Fecht, 185 Mo. 335. The section relied on by counsel for appellants (Sec. 2816, R. S. 1909) has no application here. That section authorizes the conveyance of land by power of attorney, which must be acknowledged and recorded. (3) Appellants admit they entered into the agency contract for the sale of said lands, but insist they did not understand its terms and provisions, and, consequently, they should not be bound by the terms and provisions of said agreement. It is not contended that said agency contract is ambiguous, or that it was procured by fraud or misrepresentation. Unless fraud was practiced to induce a party to sign a contract the party signing cannot avoid the obligation of the instrument by denying that he knew its contents, or that it expressed the real agreement. Tracy v. Iron Works, 104 Mo. 198; Miller v. E. L. & P. Co., 133 Mo. 220; Crim v. Crim, 162 Mo. 553; Construction Co. v. Tie Co., 185 Mo. 61; Mfg. & Imp. Co. v. Carle, 116 Mo. App. 590; Hendricks v. Vivion, 118 Mo. App. 420.

LAMM, J.—Equity. Relief sought, specific performance of a contract to convey land in Knox county.

The bill, summarized, counts on the following facts, That defendants owned the following land in fee simple: "The west end of the north half (240 acres), the southeast fourth of the northeast quarter (40 acres), and the northwest fourth of the southwest quarter (40 acres), of section fourteen, township sixty-two, range twelve west of the Fifth Principal Meridian,

and containing in the aggregate 320 acres, more or less, in Knox county, Missouri;'' and on the 9th day of February, 1904, they executed a contract, a warrant of authority to a certain partnership, real estate agents, doing business under the name and style of the Parsons Real Estate Agency of Edina, Missouri, authorizing said agency to enter into a written contract with a purchaser in defendants' behalf and names to sell and convey said land, thereby agreeing that if their agent sold the land, they, on their part, would make a good and satisfactory deed, and (if required) give a clear abstract of title. As remuneration the agents were to receive one dollar per acre ''out of the first money collected.'' The land to be sold at a sum to net defendants $11,200. If sold by other parties, defendants were to pay the agency twenty-five dollars to cover cost of advertising. If defendants wished to withdraw the land from market or advance the price, then, in such event, defendants agreed to give their said agents written notice thirty days prior to such withdrawal or advance. They further agreed to pay said agents twenty-five dollars for advertising should they withdraw the real estate from market prior to January 1, 1905—no change in price or terms by defendants to work a forfeiture of commissions. The terms of sale contract to be cash on executing a deed. Alleging that while said contract of agency was in full force and with no notice to the agents or either of them by defendants or any of them of the withdrawal of the land from market or an advance in price, defendants' said agents in their names contracted in writing with plaintiffs on September 12, 1906, to sell the land at a total price which, deducting commissions, made the net contract price, whereby $1000 were to be paid on the execution of the contract of sale, the balance when deed and possession were delivered on or before March 1, 1907. That defend-

ants, by said sale contract, agreed to furnish an abstract of title and execute a good and sufficient warranty deed.and deliver possession on or before March, 1, 1907; that on the contract date plaintiffs paid to said agency for and on behalf of defendants the said sum of $1000, and afterwards and before March 1, 1907, offered and tendered to defendants and each of them the amount of the money due them respectively and demanded a deed, and again on March 1st, they made another tender to the agency of the balance of the purchase price, and through defendants' said agents demanded of defendants the execution of a deed and possession in accordance with the terms of the sale contract; that defendants failed and refused to accept such tender or execute such deed and deliver an abstract, and ever since have failed and refused to abide the contract; that at all times plaintiffs have been and now are able, ready and willing to comply on their part and to pay the purchase price. Tender of the price in compliance with the contract is then made by the bill and it prays that defendants be compelled to perform in specie, or in lieu thereof, that the court decree title out of them and into plaintiffs, after ascertaining rents and profits from March 1, 1907, until possession be given, and that judgment be rendered therefor.

Because of contentions raised here, the answer had best speak for itself, viz.:

"Come now the defendants, and for answer to the plaintiffs' first amended petition filed herein, admit that on the 9th day of February, 1904, *they were the owners of the lands described in the petition,* and were in the possession thereof.

"Admit that on said date the defendants entered into a written contract with the Parsons Real Estate Agency, authorizing it as their agent to sell said lands for the defendants, *and to enter into a written con-*

*tract of sale for the defendants, as alleged in the petition.*

"But defendants say that said contract was not acknowledged and recorded as required by law and is therefore of no force and effect, and confers no power on the Parsons Real Estate Agency to make a sale of said lands for defendants.

"Defendants further answering say that if the said contract is binding on the defendants and does confer power on said real estate agency to sell said lands as agent for defendants, then the said agents, under said contract, had until January 1, 1905, the right, power and authority to sell the same; and that if the said agent did enter into a contract for the sale of said lands with these plaintiffs after January 1, 1905, it was done without any right, power or authority to do so; and was done without the knowledge, consent or direction of the defendants, has not been ratified by them, and is not binding on them.

"Defendants further answering say that if there is anything contained in said written contract of agency between them and the said Parsons Real Estate Agency, that could from a reading of said contract be construed to extend the said agency to a time subsequent to the 1st day of January, 1905, then the insertion of the same was a mistake, as it was understood and agreed by the defendants and the said Parsons Real Estate Agency at the time of signing the same that the agency was to terminate on the said 1st day of January, 1905, and the defendants signed said contract understanding and believing that the same was to terminate on that date.

"Defendants further answering state that shortly after January 1, 1905, and long before the 12th day of September, 1906, the time at which it is alleged in the petition the said agency entered into a contract of sale for the lands mentioned in the petition with the plaintiffs, the said Parsons Real Estate Agency

was informed by another, the agent of the defendants, that the said lands were no longer for sale, and that the said agency, by a member of its firm, said to the agent of these defendants that the contract aforesaid, under which they were empowered to sell said lands, had expired, and asked the agent of these defendants if he knew what the defendants intended doing with the lands.

"Therefore the defendants say that the said Pasons Real Estate Agency knows that their power and authority to sell said lands, if any, had terminated January 1, 1905, and that it had no right, power or authority to sell the same after that date.

"Defendants further answering deny each and every other allegation in the petition set out and contained.

"Defendants having fully answered pray to be discharged with costs."

The reply denied allegations of new matter.

The contract of agency (after conventional recitals and describing the land as in the petition) reads:

"We hereby appoint and constitute the said Parsons Real Estate Agency as our agents and authorize them to enter into a written contract for us, on our behalf and in our names, for the sales of said real estate. We agree to make a *good, satisfactory deed* and if required to do so, to give clear abstract of title to said real estate, showing title to be clearly vested in us.

"In consideration of the said Parsons Real Estate Agency's services in making such sale, we agree to pay said Parsons Real Estate Agency *out of the first money collected,* the sum of one dollar per acre, commission on said sale of property, the said property to net the said heirs eleven thousand two hundred dollars. If sold by other parties we will pay said Parsons Real Estate Agency twenty-five dollars, to cover

costs of their advertising, payable at Edina, Missouri.

"*Should we wish to withdraw the above property from market, or advance the price, we agree to give said agency a written notice of thirty days prior to such withdrawal or advance.*

"We agree to pay said agency twenty-five dollars for advertising, should we withdraw said property from sale before January 1, 1905.

"Any change in the price or terms agreed to by us shall work no forfeiture on commissions due said agency in case of sale and transfer of said property. Terms of sale to be cash when deed is transferred. Dated this 9th day of February, 1904."

The contract of sale (after reciting its date and the names of defendants as parties of the first part, and plaintiffs as parties of the second), reads:

"Parties of the first part hereby agree to sell to parties of the second part, on the performance of the agreements of the parties of the second part, as hereinafter mentioned, clear of all liens and encumbrances whatever, by *a good and sufficient warranty deed,* the real estate, situated in the County of Knox and State of Missouri, to-wit:

"West end of the north half and the southeast quarter of the northeast quarter, northwest quarter of the southwest quarter of section fourteen, township sixty-two, range twelve, west, containing three hundred and twenty acres of land, at thirty-six dollars per acre, for the sum of eleven thousand, five hundred and twenty dollars, payable as hereinafter mentioned.

"The said parties of the second part, in consideration of the premises, hereby agree to and with the parties of the first part, to purchase all his right, title and interest in and to the real estate above described, for the sum of eleven thousand, five hundred and twenty dollars, and to pay said sum therefor to the parties and State of Missouri, to-wit:

"One thousand dollars on the execution of this agreement; ten thousand five hundred and twenty dollars in payment, to-wit:

"When deed and possession is delivered on or before March 1, 1907.

"First party is to furnish abstract showing title to be full vested in them.

"First party is to pay taxes prior to and falling due on January 1, 1907.

"First parties are to allow three per cent interest on the one thousand dollar payment, from the date of this contract to the delivery of the deed and possession of the land."

The foregoing contracts of agency and sale were put in evidence. Following that, the material proof lies in small compass. There was testimony that some of the members of the Parsons Real Estate Agency were managers of a bank at Edina. In the light of this record, they appear responsible and reputable. So, defendants are spirited people of good business sense. Certain of defendants are owners of the land as tenants in common; others are the husbands of those who are married women. The real estate was rented and out of repair, its owners residing elsewhere in the State. At the inception of the agency contract the land was in charge of a cousin of theirs, Professor Eugene Funk, then the head of the city schools of Kirksville, a gentleman of pronounced business capacity and education.

The land was for sale. He applied to the Parsons Real Estate Agency to make one. After one or two abortive attempts to come to an understanding, in which attempts the contracts prepared by said agency were turned down by defendants, finally Professor Funk himself drew an agency contract—the one in evidence. The agents were not present and had no lot or parcel in its genesis. Professor Funk

forwarded it to the several defendants by mail, and it was signed severally by them and finally forwarded to and accepted by the Parsons Real Estate Agency as a completed instrument.

The proof is such that the chancellor could not well have found that the agents' authority was revoked, or that the land was withdrawn from the market, or the price altered by any notice whatever to the agents after the date of the warrant of authority up to the date of the sale contract in evidence.

When the sale in question was made, defendants were notified but refused to consummate it, at that time making the sole objection that the contract authority to sell lapsed on the first day of January, 1905.

Defendants were allowed to testify, over the objections of plaintiffs, that they severally understood the contract to be that it expired automatically on January 1, 1905, and that they intended to say so in the contract.

There was no issue in the pleadings or proof offered of fraud, surprise, accident or mutual mistake.

The unquestioned proof is that the land sold for its actual value; that the sale was *bona fide;* that timely legal tender was made of the entire purchase price to each defendant in the amount due each and performance was demanded; that such tender and performance were severally refused. At the trial a further tender of the price was made in gold coin in open court and again refused.

The decree finds the facts in detail, hence is long and very full. Its terms are not necessary for this review. In brief and in effect, it found the issues for plaintiffs, decreed performance of the contract in specie and vested title out of defendants and into plaintiffs on term imposed. It found the rental value, took an accounting of rents, and gave judgment accordingly.

The points relied on for reversal apparently are:

(1)   The bill states no cause of action.

(2)   The contract of agency pleaded in the petition is not the contract put in evidence.

(3)   Properly construed the contract of agency, *ex vi termini,* expired on the 1st day of January, 1905, and, therefore, the contract of sale made at a later date is without authority.

(4)   If its terms are unfortunate in that respect, then the *understanding and intention* of defendants (pre-natal, natal or post-natal to the contract), must control and, under this record, make it expire on that date.

(5)   At all events, plaintiffs' remedy is at law for damages and not in equity for performance in specie, hence the chancellor unsoundly exercised his discretion in that regard.

(6)   The sale contract did not follow the *power,* but was in excess of it (and herein of the fact that it called for three per cent interest on the $1000 advance payment, it called for a "warranty" instead of a "satisfactory" deed, it did not give a sufficient description of the land).

(7)   The agency contract was not acknowledged and recorded, hence performance should not be decreed.

There are some minor questions discussed by counsel, but they logically fall within the propositions stated. Such of them as are material will receive attention in the course of the opinion.

The question is: In view of the premises, can the decree stand?

I.   Did the bill state a cause of action?

Defendants did not demur to the bill, or object to evidence thereunder. By such failure they waived two opportunities to challenge its sufficiency. There was a long trial. The chancellor took time to consider, his

decree following some months later. For the first time in the motion in arrest defendants raised the point of a bad bill. The rule is that a challenge to a petition at the threshold stands on a better foot than a challenge after a verdict or judgment. In support of a decree under such circumstances, the bill will be viewed with a less critical eye than if challenged *in limine* by a demurrer. We have been so lately over this ground in East St. Louis Ice and Cold Storage Co. v. Kuhlmann, 238 Mo. 685, that we refer to that case for the rule and its underlying reasons. If, however, a bill is so radically bad as to state no cause of action, such defect is in its nature jurisdictional and may be raised on appeal for the first time where the defects are of a character not cured by the Statute of Jeofails. [Childs v. Railroad, 117 Mo. l. c. 427, and cases cited; Hanson v. Neal, 215 Mo. l. c. 278.] After a verdict or decree, the grace of every allowable inplication is permitted in aid of the verdict or decree, and all mere ambiguities in allegation are resolved in its favor. There is no fatal vice on the face of the bill as a pleading and we rule the point against defendants. Indeed the points made by counsel under this head fall naturally under other subdivisions of their brief.

II. Was the contract of agency pleaded in the bill the contract put in evidence?

They agree in date, subject-matter and parties. There is no pretense any other existed. Not only so, but the answer admits defendants made the contract authorizing their agents to sell their lands "and to enter into a written contract of sale for the defendants, *as alleged in the petition.*" In the face of such facts and such broad admission, there is no substance in the point. It is also ruled against defendants.

III. We come to consider the third and fourth questions, viz.: (1) Does the contract expire by its terms on January 1, 1905; or (2) if not, is it made to

expire on that date by reading into it the intention and understanding of defendants as outlined on the witness stand?

Both must be answered in the negative. By its terms the contract is unlimited in time. There is a provision in it for withdrawing the land from market, which, in effect, would be a revocation. There is another for advancing the price, but, as between the agents and the principals, thirty days' written notice was necessary in either event. We shall not rule that such time provision as to third parties, like plaintiffs, is preclusive. A naked contract of agency, that is, one not coupled with an interest, may be revoked by the principal, and, absent matter of estoppel, that revocation cuts away the agent's power to deal with third parties on the subject-matter of the agency. Whatever the rights between a principal and agent, *inter sese,* the right to revoke an unexecuted naked power cannot be called in question by third parties. But here there is neither a plea of revocation, nor is there substantial or uncontradicted evidence of revocation. True, a witness for defendants, Professor Funk, testified to a conversation with one of the agents, from which it might be inferred that both sides assumed the contract was at an end prior to the sale to plaintiffs. That conversation is pleaded by way of defense in the answer, possibly on the theory that the contract was ambiguous and that the construction put on it by both parties is of service in getting at its meaning. But this contract is not ambiguous. There is no room left for construction. It was written by a man who well understood the English language, who was skilled in knowing how to express his ideas with perspicuity and did so, who was of kin to defendants and was alert to their interests. Its origin does not invite criticism. The contract speaks for itself in no uncertain or unsteady voice. Moreover, the conversation, as related, was denied by the agent. The trial

chancellor was at liberty to take the version of one or the other. When men sit down to put a contract in writing and do so, the presumption is they write all there is of it. All prior or contemporaneous verbal conversations relating to the subject-matter are presumed merged in the writing. The precept to go by is: The spoken word flies; the written word remains. (*Vox emissa volat, litera scripta manet.*) However, men labor under such infirmities of mind and memory that mutual mistakes are made, or fraud, imposition, surprise or accidents sometimes happen. In such case, when proper issues are made, relief goes in equity. But to get that relief the pleadings must raise such issue and the proof must respond to the pleadings. Here there is neither proof nor allegation of that kind; the contract was drawn, as said, by their trusted and gifted kinsman, and to permit the parties to a contract to vary its terms by parol proof, or by their secret or mistaken understanding of its obvious meaning would be a doctrine unheard of—one as anxious as new. It would make contracts as unstable as water, and subject the dealings of mankind to incurable paralysis. We may be permitted with profit to present the language of Chief Justice Kent in Bebee *et al.* v. The President, etc., of the Bank of New York, 1 Johns. l. c. 572—language approved by so eminent an authority as Broom (Broom's Legal Maxims, 8 Eng. Ed., p. 517):

"It is a sound rule of evidence, that you cannot alter, or substantially vary the effect of a written contract by parol proof. This excellent rule is intended to guard against fraud and perjuries; and it cannot be too steadily supported by courts of justice. *Expressum facit cessare tacitum:—vox emissa volat, litera scripta manet,* are law axioms in support of the rule; and law axioms are nothing more than the conclusions of common sense, which have been formed and approved by the wisdom of ages. This rule pre-

vails equally in a court of equity and a court of law; for, generally speaking, the rules of evidence are the same in both courts. If the words of a contract be intelligible, says Lord Chancellor THURLOW (Shelburne v. Inchiquin, 1 Bro. C. C. 341), there is no instance where parol proof has been admitted to give them a different sense. 'Where there is a deed in writing,' he observes, in another place (Ld. Irnham v. Child, 1 Bro. C. C. 93), 'it will admit of no contract which is not part of the deed.' You can introduce nothing on parol proof that adds to, or deducts from, the writing. If, however, an agreement is, by *fraud or mistake,* made to speak a different language from what was intended, then, in those cases, parol proof is admissible to show the fraud or mistake.' These are cases excepted from the general rule. But the allegation of fraud or mistake must be made in the bill, before evidence to those points can be received. [Cripps v. Jee, 4 Bro. 472.]''

Here was a contract of agency. Its life and purpose was to empower the agent to deal with third parties in vital matters. True, third parties are put upon inquiry as to the power of an agent to sell real estate and must deal with the agent with the power before them, or presumptively before them. Yet the rule of law is that such third parties are not interested in the secret processes of the principal's mind. They get at what was in the principal's mind by the visible result evidenced by the writing. They are interested in the character in which the agent is held out by the principal to those who may have occasion or opportunity to deal with him. "This character is a tangible, discernible thing, and, so far as third persons are concerned, must be held to be authorized, as it is the only expression and evidence from which the principal intends that they shall determine his purposes and objects." [Mechem on Agency, sec. 278; Kilpatrick v. Wiley, 197 Mo. l. c. 166.]

We rule both propositions against defendants.

IV. Is plaintiffs' only remedy at law for damages?

The scope of this contention is leveled at the discretion courts of chancery exercise in decreeing performance in specie. The rule is that specific performance is somewhat of grace as over against a hard and fast matter of absolute right. The chancellor has discretion to perform or not to perform. But he has studied the law of specific performance to little purpose who supposes that discretion may be exercised without reason and of caprice. The discretion to be exercised is a sound (that is) *judicial* discretion. It is exercised against performance when plaintiffs come into a court of equity with unclean hands; or when the contract is incomplete or so ambiguous as to be uncertain in terms and intendment; or where the contract is unfair, overreaching, biting; or when there are present (in pleadings and proofs) elements of mutual mistake in matter of substance, covinous contrivances, fraud, imposition, surprise or accident, as those terms are understood in the law. Absent such features and present a fair, plain contract, one complete and certain in terms and intendments, specific performance goes as a matter of right. The most direct and satisfactory·remedy which a party instinctively seeks is specific performance when he is injured without fault on his own part by the non-fulfillment by the other party of an agreement explicit and just in it terms, relating to a sale of real estate. [Woodbury v. Gardner, 77 Me. l. c. 69; Kirkpatrick v. Peace, 202 Mo. l. c. 493-4.] Specific performance produces a practical result, a more complete and rounded justice than mere money damages. The maxim is: Equity delights to do justice, and that not by halves. In the absence of inequitable-features in real estate contracts, to perform them in specie by a court of conscience is but to re-

quire one man to keep his plighted word to another—a thing that touches honor and is good ethics and sound equity—is but to see to it that he is made to do as he would be done by. That golden rule is a very good definition of equity. Justinian puts it: To live honestly, to harm nobody, to render to every man his due. [B. L. Dict., tit., "Equity."]

It is argued that damages at law will sometimes go for non-performance when performance in specie in equity will not go. In other words, that it is easier to make a case at law than in equity. We have no bone to pick with that proposition. But it is a boneless contention here. Our question is not whether plaintiffs could recover damages at law or whether the obstacles in the road of such recovery are more easily surmounted than are those in the way of performance in kind; for, after all, the crucial question is: Are these plaintiffs entitled to the very thing contracted for, to-wit, the land?

On the question of market value, uncontradicted testimony went in on behalf of plaintiffs that the land sold for all it was worth and that there had been no change in the market price between the time of making the agency contract and that of making the sale contract. However, there was a bit of evidence on the part of defendants to the effect that some other real estate agent suggested or offered $37.50 per acre (a dollar and a half more), or asked if defendants would take $37.50 an acre, and defendants were not willing to dicker on that basis. If this evidence were given full probative force as indicating a *real* bid, it would amount to nothing in the absence of other testimony that defendants' agents knew of such offer, or in the absence of notice to them of a change of price, or of a revocation of their power, or evidence of lack of good faith.

We rule the main and minor propositions discussed under this head against defendants.

V.  Did the contract of sale follow the power, or vary from it materially?  (And herein of certain subsidiary questions.)

(a)  When a main power is granted, incidents essential or usual to the exercise of that power are also granted—the greater includes the less by necessary implication.  *Incidentia rei tacite sequuntur*.  But a substantial departure from both the express and implied power does not bind the principal.  He can say when called on to perform:  I did not agree to those terms (*Non haec in foedera veni*).

Assuming said general propositions sound, how does the case stand?  The contract of sale provides for the execution of a deed and delivery of possession on the 1st of the following March.  The contract of agency says nothing about that.  Counsel do not argue that particular provision is in excess of the power and yet it is of more substance than any departure contended for.  Evidently, to make a perfect contract, it was necessary to fix a time for the consummation of it.  That time to be reasonable should be the usual time for the expiration of tenancies—the beginning of a cropping season.  It is common knowledge that March 1st is such in this latitude.  The main power to contract carried the power to fix a time and defendants tacitly acquiesce in that view of it.  The wisdom and necessity of exercising the implied power we have just considered, is seen at a glance; for the land was rented and for rent and if possession was to be given at any other time defendants stood to be ground by an upper and nether millstone.  They would have to reckon with their present or prospective tenants as well as their vendees.

(b)  But it is argued the power granted contemplated only *one* cash payment, whereas the sale contract provides for two—one to bind the bargain (to use a chimney corner phrase), the other at the time the deal was to be consummated. But is it so clear that it

looked to only one payment, so long as the transaction was put on a cash basis at the moment of consummation? The agency contract provided that the agents should receive their commission "out of the *first* money collected." Did that provision not imply more than *one* collection of money? We think so.

But aside from that, the gist of the agency contract in the particular now up is that there should be no time payments after the deed passed and possession was given—that the transaction was cash. The owners wanted their shares cash in hand. They had the right to make their own terms in that respect and they did so. If A is to pay for B's property at the time deed and possession are delivered, to-wit, on Thursday, and A pays part Monday, part Tuesday and part Wednesday, that arrangement results in a cash transaction on Thursday and meets the contract intendment. *Q. E. D.*

(c) It is also argued that the first payment was to defendants' agents, that the power did not contemplate a payment to those agents; therefore it was in excess of the power and no payment at all. The argument proceeds on the theory that in receiving that payment those agents did not act on behalf of defendants but, *pro hac vice*, became agents of plaintiffs in handling that money. We shall not rule that the power granted in this instance was authority to the agents to receive payment, though the right to receive their commission out of the first payment squints that way, and this view is strengthened by the other facts that the vendors were widely scattered, were not present to receive any money and made no provision for any depository or person to receive payment on their behalf.

If those agents had retained that money, we would have a different case to deal with. But they did not retain it. It was tendered timely, with the whole contract price, to defendants severally. In such case it

is a waste of time to consider or rule the question whether the agents had authority to receive the first payment and bound their principals by the receipt of the money. It is enough to rule, as we do, that the tender bound them, if they were not bound before. Since this is not a case where plaintiffs plant themselves on a payment to agents and seek to bind the principals without a tender to them, *in propria persona,* of the whole contract price, it will be time enough to deal with such a case when it is here.

(d) It is also argued there was a fatal variance between the power and the sale contract because of the provision that defendants pay three per cent interest on the advance payment from September 12th to the 1st of the coming March. A bank deposit of that amount made at the time the payment was made would add to itself the amount resulting from that rate per cent, thereby making defendants whole if they, in turn, received interest in the usual course of banking business in a saving bank. Since the power contemplated a cash payment on the 1st day of March ensuing, it is not straining the power nor would it produce injustice, to read into it the idea of the worth of the money at the time of the final payment. That theory was advanced, *arguendo,* in Kilpatrick v. Wiley, 197 Mo. 168-171.

But we prefer to rest our decision on this point on the following propositions: First, the pleadings raise no such issue; second, plaintiffs ask nothing by virtue of the provision—their tender disregarded the interest; and, third, the whole matter is akin to a tempest in a teapot. In its nature it could (and did) result in no injury. *De minimis non curat lex.*

(e) The agency contract called for a "satisfactory deed," the sale contract called for "a warranty deed," it is argued that is a material departure from the power. We think otherwise. The word *satisfac-*

*tory* relates to a person, it implies a mental state. What person? Whose mental state? It cannot be soundly argued that vendors were contracting to convey by a deed satisfactory to *themselves*. That would be a poor inducement to purchase and a stumbling-block in the way of a sale. It would tend to defeat the very office of the agency contract, hence is unthinkable. The purchasers have a vital interest in the form of the deed, and the power contemplated that they were the ones to be satisfied. We are of opinion an agent who has authority to contract for a satisfactory deed, has power to contract for a warranty deed. Warranty deeds are usual deeds, quitclaim deeds are exceptional. They are rarely taken where a full consideration is paid and a clear title is contracted for, as here; for they cut off covenants and are a red danger-signal of equities behind.

(f) It is next argued that the sale contract misdescribes the land. The argument travels on the theory that only eighty acres of the land is described therein, hence the sale contract does not follow the power. As to that we rule: (1) No such contention was made below and should not be made on appeal. (2) There is a solemn admission in the answer to the contrary. (3) There is no merit in the point. The number of acres is the same. The two forties are described correctly. These quarter-quarter sections, being in a section not on a range or township line, are bound to contain forty acres each. Deducting the eighty acres in the two from the total 320 acres given, leaves 240 acres to answer to the description of the "west end of the north one-half" of section 14, precisely as does the agency contract which runs as does the petition, viz.: "The west end of the north half (240 acres)."

"The rule of law is well settled in this State, that the call for quantity may be resorted to for the purpose of making that certain which otherwise would

be uncertain, and especially is this true where lands are described by sectional subdivisions as in the case in hand.'' [Davis v. Hess, 103 Mo. l. c. 36.]

(g) Finally, as decisive of most if not all the contentions made under paragraph V. we hold that the terms of the answer preclude the defenses considered. Each of them was an affirmative defense and none of them are pleaded. There is no general denial in the answer and if there was it would not raise defenses of the character passed on. The answer is a confession and avoidance of every allegation in the petition except two, to-wit, those of tender and performance by plaintiffs. Those are denied. Such denial raised no issue such as defendants now interpose. But if we are mistaken in that, and the answer be held a general denial, yet ''the general denial puts in issue the facts pleaded in the petition, *not the liability*. The facts from which the law draws the conclusion of non-liability must be pleaded in the answer when they are not stated in the petition.'' [Musser v. Adler, 86 Mo. l. c. 449, and cases cited.]

VI. Is the fact that the contract of agency was not acknowledged or recorded fatal to relief?

Learned counsel argue that way. Their argument rests on Revised Statutes 1909, section 2816, reading: ''Every letter of attorney, or other instrument containing a power to convey real estate, as agent or attorney for the owner thereof, or to execute as agent or attorney for another, any instrument in writing conveying real estate or whereby real estate may be affected in law or equity, shall be acknowledged or proved, and certified and recorded, as other instruments in writing conveying or affecting real estate are required to be acknowledged or proved and certified and recorded.''

The force of that section is spent in preserving for record muniments of title. If a conveyance is (or

is to be) made by the attorney in fact and his power be unacknowledged, it (the power) is not entitled to record. Left off of record there is a link out in the record chain of title. Hence, the requirement of the statute. But a deed or muniment of title may be good as between the parties without acknowledgment or record. The function of the acknowledgment is to prove its execution—without it, proof must rest *aliunde*. The purpose of the record is to impart notice.

The construction put on the power of attorney in this instance was not that of a "power to convey," but of a power to contract that the principal should convey—quite another matter. Under the foregoing view, the power in the instant case does not fall within in the letter or spirit of the statute quoted.

There is a statute, section 2783, Revised Statutes 1909, in point, reading in part: ". . . . and no contract for the sale of lands made by an agent shall be binding upon the principal, unless such agent is authorized in writing to make said contract." Before 1887, when the foregoing clause was enacted into law as an amendment to the Statute of Frauds, the rule had been that an agent's authority to make the contract need not be in writing. [Riley v. Minor, 29 Mo. 439; Johnson v. Fecht, 185 Mo. l. c. 342.] Since the passage of said amendatory act, a writing (not the acknowledgment or the recording of it) has been held to subserve the purposes of the statute. [Roth v. Goerger, 118 Mo. 556; Kirkpatrick v. Pease, 202 Mo. l. c. 489; Johnson v. Fecht, supra.] The object of the section was to dispense with parol testimony to prove the agent's authority and to require that authority to be evidenced by writing. When the lawmaker desires to further amend the Statute of Frauds by requiring the warrant of authority to make a contract in the name of the principal (leaving it to the principal himself to make the conveyance) to be also acknowledged

and recorded, it will be time enough for us to hold an acknowledgment and recording are essential to the validity of a contract of agency such as at bar. We shall not amend the statute by judicial fiat.

This point is also ruled against defendants.

We have pursued the matter far; there are other contentions, but they are either covered by rulings already made, or are without substantial merit justifying a prolongation of this opinion. For the first time in a late brief in Banc, after the case had been written in Division, the scope and character of the decree, *nisi*, are questioned. We have looked into that and find it worked out an equitable result. We find no fault with it.

The premises considered, the decree was right and is, therefore, affirmed. All concur except *Woodson, J.*, who dissents.