SUE WHELESS STEPHENSON, Respondent, v. CHARLES S. JOBES, Defendant, SECURITY NATIONAL BANK, now SECURITY STATE BANK, Appellant.

In the Kansas City Court of Appeals, April 30, 1923.

1. HUSBAND AND WIFE: Pledges: Wife's Pledge of Stock as Collateral Security For Husband's Liability Now Existing or Which May Hereafter Exist, Held Given to Secure Both Existing and Future Indebtedness of Husband. In a suit in equity for return of stock deposited by wife as collateral security for indebtedness of husband where agreement executed with note provided that the stock was put up to secure the payment of the note and all other liabilities of the husband now existing or which may hereafter exist, held that note and agreement were given to secure both existing and future indebtedness of husband. -

2. ———: ———: Bank Held to Have Complied With Conditions Under Which Note and Pledge Were Given to Secure Past and Future Indebtedness, Authorizing it to Hold and Sell Same to Pay the Indebtedness. Where wife pledged stock and executed a collateral note and agreement to a bank as security for existing and future indebtedness of her husband, whether new business was thereafter handled by the bank for husband would be immaterial if the bank was ready and willing to handle same, and as the court found bank complied with the conditions on which the note and pledge were given, it was entitled to hold and sell same to pay the indebtedness of husband.

3. EVIDENCE: Introduction of Parol Evidence Contradicting Terms of Written Instrument Held Error Where no Fraud or Misrepresentation Was Alleged in Petition. Where a wife executed an agreement and collateral note for the sum of $1750 and deposited stock of the value of $2500 with a bank as security for the past and future indebtedness of her husband, the agreement expressly providing that the stock was put up to secure existing and future liabilities of the husband and without limitation, held it was

error to permit wife to introduce testimony to show that there was a verbal understanding that the collateral agreement was to secure the indebtedness of husband only to the extent of the amount of the note for the sum of $1750, as such testimony contradicted the terms of the written agreement.

4. HUSBAND AND WIFE: Under Terms of Collateral Agreement Executed With Collateral Note Given to Secure Past and Future Indebtedness of Husband, it is Held That Wife's Liability Was Not Limited Only to Amount of Note. In an action by wife for return of stock where she executed a collateral note and deposited the stock with a bank as collateral security for present and future indebtedness of her husband, it is *held* that under the terms of a collateral agreement executed by wife with bank that bank was entitled, upon foreclosure of the stock, to apply the amount realized on the sale of the stock to the payment of the collateral note and the overplus to the payment of husband's other liabilities.

Appeal from the Circuit Court of Jackson County.— *Hon. Thad B. Landon,* Judge.

REVERSED.

*Omar E. Robinson* and *Halbert H. McCluer* for respondent.

*Sebree & Sebree* for appellant.

BLAND, J.—This is a suit in equity for the return of stock deposited as collateral and for an accounting. The court rendered judgment against the defendant Security National Bank and in favor of plaintiff in the sum of $750 and interest amounting in all to $1018 and in favor of defendant Charles S. Jobes.

The facts show that plaintiff's husband, J. J. Stephenson, doing business as the Stephenson Hay Company, was engaged in buying and shipping hay in Kansas City, Missouri. Stephenson was a customer of the Security National Bank, now Security State Bank. It was his custom to take to the bank shipper's order bills of lading issued by railroad companies on carload shipments of hay, with sight drafts attached drawn on the

consignee. The bank would forward these papers to the proper parties for collection of the drafts but in the meantime would give Stephenson credit on his checking account for the amount of the draft. While the drafts were in process of collection a charge was made on the records of the bank for the amount of the draft on what is known as its transit account. When the draft was collected the transit account would be credited with the proceeds. If the draft was not paid, the amount would be debited to Stephenson's checking account.

About September 23, 1915, there were outstanding drafts uncollected in the sum of $5611.66. This money had been checked out of the bank by Stephenson. The returns of these drafts were coming in slowly, some of the hay had been refused at destination and the drafts not paid. C. S. Jobes, president of the bank, called Stephenson to the bank and told him that the bank would require some security before he could continue to get credit upon deposit of the drafts. Stephenson told Jobes that he had no collateral but stated that his wife, the plaintiff herein, owned twenty-five shares of stock in a lumber company of the par value of $100 per share which he might induce her to put up as collateral for him, and Jobes said that he would ascertain the actual value of this stock. Jobes found the value of the stock to be $1750 and told Stephenson to have his wife bring the stock to the bank. She brought it in person to the bank on September 23, 1915, and there executed a collateral note with a collateral agreement and turned the stock over to the bank. The face of the collateral note was in the sum of $1750 and was signed by J. J. Stephenson and plaintiff. A provision then followed consisting of a collateral agrement providing that the stock was put up "to secure the payment to the Security National Bank of the above note and all other liabilities to it of the undersigned or the Stephenson Hay Company or J. J. Stephenson now existing, or which may hereafter exist." It also recites—"In the event of the non-payment of said note, or of any of said other liabilities, at the maturity of any

of them respectively," the bank was authorized to foreclose and sell the stock at public or private sale without demand or notice, and that out of the proceeds of the sale the amount of expense connected with the sale was to be paid first, and, next, the note and other liabilities assured by said collateral. At the end of the collateral agreement the instrument was again signed by the plaintiff.

The bank continued to do business with Stephenson until October 12th when he left for Canada and all transactions with him ceased. Two officers of the bank testified that the bank after the signing of the note and collateral agreement continued to handle for plaintiff's husband drafts covering over twenty new shipments and cashed drafts aggregating $2038.56, and that when the account was closed on October 12th there were outstanding drafts to the amount of $6825.82. That since that time $3204.85 had been collected upon such drafts and the stock deposited with the collateral note and agreement had been sold at foreclosure for $2500, which sums had been applied to Stephenson's indebtedness, resulting in a loss to the bank out of its dealings with Stephenson in the sum of several hundred dollars, which had been charged off. Stephenson and his son testified that no drafts for new shipments were drawn after September 23, 1915, and Stephenson testified that the bank refused to honor any additional drafts and refused to handle any more drafts for him after that date.

The petition alleges that the agreement plaintiff had with the bank was that she would assign her stock to the bank to secure the *future* indebtedness of Stephenson and that the bank would continue to give Stephenson credit for drafts drawn and deposited by him as it had done in the past; that the bank had violated the agreement by refusing to permit Stephenson to transact business through the bank and had refused to give him credit for any sight drafts drawn by him after the agreement was made and that the consideration for the assignment of the stock to the bank wholly failed and that she was entitled to receive back her stock.

It seemed to be the theory of plaintiff at the trial and in this court that she should be permitted to contradict the terms of the written instrument (the collateral note and agreement) so as to show that as a matter of fact that, although the instrument recited that the stock was pledged to secure not only the indebtedness of Stephenson to be created in the future but that existing at the time the instrument was signed, the actual agreement was that the stock was deposited to secure only future indebtedness of Stephenson. It was, and is, contended that as the bank refused to transact any further business with Stephenson, the consideration failed. She also claims that she was properly allowed to contradict the terms of the written instrument by showing that the collateral note and agreement was that the stock was deposited to secure Stephenson's indebtedness to the extent of $1750 only and not to the full extent of his indebtedness as provided in the agreement. If plaintiff should be permitted to contradict the terms of the collateral note and agreement by showing that it was to secure only future indebtedness of Stephenson, which we think she cannot do, nevertheless the preponderance of the testimony shows that it was made to cover both past and future indebtedness. Plaintiff did not attempt to show that the written instrument had been changed in this respect but testified that she understood from the president of the bank that it was to secure only future indebtedness. Stephenson likewise testified that this was the agreement. However the president of the bank denied this and stated that it was understood that the agrement was to secure both existing and future indebtedness. The dispute it would seem should be decided in favor of the defendant for the reason that in an abandoned pleading plaintiff alleged that the agreement was to secure both kinds of indebtedness. However, the Chancellor found that this was the agreement and we are not disposed to disagree with him.

It is insisted by plaintiff that the preponderance of the evidence shows that the defendant refused to handle

drafts upon new shipments after the collateral agreement was entered into and in support of this it is argued that the only testimony to dispute plaintiff's evidence that the bank refused to take any new drafts, was the evidence of the bank's officers who testified that there were over twenty new shipments, but no details were given showing the amount of any specific shipment; that the testimony of the cashier of the bank was general as to the amount realized upon the drafts handled by the bank for Stephenson; that he did not testify as to the amount realized upon each draft; that it is impossible to tell whether the bank handled any new shipments; that the evidence shows that Stephenson's books were taken by the bank at the time he quit business and that they would show the amount of the new shipments, if any, after September 23rd and that the books of the bank which would show final disposition and net returns of each and every draft cashed were not brought into court. Stephenson and his son testified that no draft was drawn upon any new shipments, and his son testified that the drafts claimed by the bank to have been drawn after September 23 could have been against old shipments which had been refused by the consignee and reconsigned and new drafts issued, which was the practice under such circumstances. However, whether any new business was handled by the bank for Stephenson would be immaterial if the bank was ready and willing to handle the same and the court found that defendant "complied with the conditions on which said note, and pledge (were) given and was entitled to hold and sell same to pay the indebtedness of her husband." There is ample testimony to show that the bank was willing to transact further business for Stephenson and we can not say that the testimony contradicting this was of any greater value than the affirmative testimony. The court having found that the bank had complied with its agreement, and being in a better position than we to judge of the credibility of the witnesses, we are not disposed to differ with him in his finding.

We think that the court erred in rendering judgment against the defendant in any amount. It is contended by plaintiff that the collateral note not only limited her *personal* liability to the sum of $1750 but that the collateral agreement limited the application of the proceeds of the bank stock to the payment of the face of the collateral note, to-wit, the sum of $1750, and as the security was sold by the bank for $2500 that she is at least entitled to a judgment in the sum of $750. But the collateral agreement does not bear out this contention. It expressly recites that the stock was deposited for the purpose of securing existing and future liabilities of Stephenson without limitation. The court permitted plaintiff to introduce testimony to show that there was a verbal understanding that the collateral agreement was to secure the indebtedness of Stephenson only to the extent of $1750, and plaintiff claims that the officer of the bank with whom she talked so explained the agreement to Mrs. Stephenson, but we do not construe his testimony in this light. He stated that he told her that her *personal* liability was limited to $1750, the then market value of her stock. However this may be, the court erred in permitting plaintiff to testify at all on this subject for the reason that it contradicted the terms of the written instrument and no fraud or misrepresentation was alleged in the petition. [Beheret v. Myers, 240 Mo. 58, 75, 76; Deming Investment Co. v. Wasson, 192 S. W. 765; Crim v. Crim, 162 Mo. 544; Spelman v. Railway, 187 Mo. App. 119.] Under the terms of the collateral agreement the bank was entitled, upon the foreclosure of the stock, to apply the amount realized on the sale of the stock to the payment of the collateral note and the overplus to the payment of Stephenson's other liabilities. [Garrett v. Bank, 241 S. W. 87; Selma Bridge Co. v. Harris, 132 Ala. 179; American National Bank v. Minor, 142 Ky. 792.]

Plaintiff in contending that it was permissible for her to contradict the collateral agreement by parol testimony cites the cases of Wilkinson v. Misner, 158 Mo.

App. 551 and G. Ober & Sons v. Drane, 32 S. W. 713 (Ga.) In the former case the agreement was not signed by the defendant who was permitted to contradict it by parol, and in the latter the rent notes were not mentioned in the original note or the collateral note and agreement which secured its payment, and it was permitted to plaintiff to show that enough had been collected on the rent notes to discharge the collateral note and that the rent notes were to secure the collateral note and not the original note, thus showing the payment of the collateral note rather than contradicting the written agreement.

The judgment against the defendant bank is reversed. All concur.